**UNITED STATES of America**

v.

**Andrew F. BURTON, Appellant.**

**No. 76–1839.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 9, 1977.

Decided July 28, 1978.

Rehearing Denied Aug. 24, 1978.

Jacob A. Stein, Washington, D. C., for appellant.

James F. Hibey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Jason D. Kogan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROBINSON and MacKINNON, Circuit Judges, and HOWARD T. MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

Opinion for the court filed by MacKINNON, Circuit Judge.

Dissenting opinion filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

MacKINNON, Circuit Judge:

On October 17, 1974 appellant Burton was charged with thirty-five counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a).[1] Seven counts were struck on the Government's motion, and a jury trial commenced on the remaining twenty-eight counts on April 27, 1976. On May 10, the jury returned a verdict finding appellant guilty as charged on the twenty-eight counts.

On April 26, 1976, the date which was originally set for trial, Dovey Roundtree, one of two counsel retained by appellant, filed a motion to withdraw which was granted by the district court. At the same time, appellant moved for a thirty- to sixty-day continuance for the purpose of seeking counsel to replace Roundtree. The court denied this motion, and it is from this ruling that defendant appeals. The issue presented to us is whether the district court's ruling deprived appellant of his right to choice of counsel thereby violating the Sixth Amendment's guarantee of "the Assistance of Counsel for [the accused's] defence."

### I

■ The Sixth Amendment[2] guarantees that a person brought to trial in any federal court must be afforded the right to the assistance of counsel before he can be validly convicted.[3] The importance of counsel's function to the effective operation of our adversary system is unquestioned.[4] An

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

1. Appellant was indicted on May 21, 1974 for 19 counts of unlawful distribution of controlled substances. The grand jury returned a second indictment containing 35 counts on October 11, 1974, and then a superseding 35-count indictment was returned on October 17, 1974. The Government dropped the first two indictments and appellant moved for dismissal of the third on October 23, 1974. On authority of this court's holding in *United States v. Moore*, 164 U.S.App.D.C. 319, 505 F.2d 426 (1974), *rev'd* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the district court granted the motion without prejudice (Original Record (hereafter "R.") at 4), but on the Government's appeal, the order granting the defendant's motion to dismiss was vacated, defendant's motion was denied, and the case was held in abeyance pending the Supreme Court's review of *Moore* (R. at 16). When the Court eventually reversed

our decision in *Moore*, this case was set for trial.

2. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

3. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

4. *Geders v. United States*, 425 U.S. 80, 88, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Glasser v. United States*, 315 U.S. 60, 69–70, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

essential element of the Sixth Amendment's protection of the right to the assistance of counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing. As the Supreme Court stated in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), "[i]t is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." 287 U.S. at 53, 53 S.Ct. at 582.[5] An accused who is financially able to retain counsel must not be deprived of the opportunity to do so.[6]

Yet, the right to retain counsel of one's own choice is not absolute.[7] The right "cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same."[8] The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force.

In this case, appellant challenges the denial of his motion for a continuance to replace Roundtree, one of his two retained attorneys. It is firmly established that the granting or refusal of a continuance is a matter within the discretion of the judge who hears the application, and is not subject to review absent a clear abuse.[9] Yet when the continuance is sought to retain or replace counsel, the defendant's Sixth Amendment right to the assistance of counsel is implicated.[10] In such circumstances, the right to select counsel must be carefully balanced against the public's interest in the orderly administration of justice.

Thus, the trial judge may not insist on such expeditiousness that counsel for the defendant lacks reasonable time to prepare for trial; stripping away the opportunity to prepare for trial is tantamount to denying altogether the assistance of counsel for the defense. On the other hand, the

5. *Crooker v. California*, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); *Chandler v. Fretag*, 348 U.S. 3, 10, 75 S.Ct. 1, 5, 99 L.Ed. 4 (1954) ("[A] defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth."); *Lee v. United States*, 98 U.S.App.D.C. 272, 274, 235 F.2d 219, 221 (1956); *Smith v. United States*, 53 App.D.C. 53, 54–55, 288 F. 259, 260–61 (1923).

6. *United States v. Inman*, 483 F.2d 738, 739–40 (4th Cir. 1973), *cert. denied*, 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974).

7. *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir. 1978); *United States v. Vargas-Martinez*, 569 F.2d 1102, 1104 (9th Cir. 1978); *United States v. Gray*, 565 F.2d 881, 887 (5th Cir. 1978); *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); *United States v. Tortora*, 464 F.2d 1202, 1210 (2d Cir.), *cert. denied sub nom. Santoro v. United States*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); *United States v. Hampton*, 457 F.2d 299, 301 (7th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972).

8. *Lee v. United States, supra*, 98 U.S.App.D.C. at 274, 235 F.2d at 221; *Smith v. United States, supra*, 53 App.D.C. at 55, 288 F. at 261. *Accord, Gandy v. Alabama, supra*, 569 F.2d at 1323 and cases cited at n.8.

9. *Gilmore v. United States*, 106 U.S.App.D.C. 344, 348, 273 F.2d 79, 83 (1959) (Burger, J.); *Payton v. United States*, 96 U.S.App.D.C. 1, 222 F.2d 794 (1955). *Accord, United States v. Poulack, supra*, 556 F.2d at 86; *United States v. Harrelson*, 477 F.2d 383, 384 (5th Cir. 1973).

10. The right of choice of counsel is related to the right to adequate time to prepare for trial. Counsel is not entitled to unlimited preparation time; instead, counsel is entitled to reasonable preparation time. Just as continuances to enable defendants to select counsel need not be granted where the orderly procedures of the court will be disrupted, continuances for more preparation time than necessary need not be granted. In turn, the question of reasonable preparation time is closely related to the issue of inadequate assistance of counsel: if preparation time is unreasonably short, counsel cannot competently represent his client, and may make negligent omissions or acts that deprive defendant of his constitutional right to the assistance of counsel for his defense. While all of these rights are related, as they all are within the parameters of the Sixth Amendment's right to the assistance of counsel, the right to choice of counsel is distinct from the right to adequate assistance of counsel. The fact that one is infringed does not indicate one way or the other whether the other is infringed. *See* dissent at n.106.

defendant cannot insist on an unnecessary delay or a delay of unreasonable proportions. The condition of most criminal dockets demands reasonably prompt disposition of cases; when cases are set far in advance for a day certain, an unreasonable delay in one case only serves to delay other cases, and this carries the potential for prejudice to the rights of other defendants. ·

■ Given these countervailing considerations, and recognizing that the court has the right to control its own docket to require that cases proceed in an orderly and timely fashion, the conclusion is inescapable that the court in exercise of a sound discretion may grant or deny motions for continuances. As stated by the Court in *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964),

> The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

376 U.S. at 589, 84 S.Ct. at 849.

■ We recognize that the right to choice of counsel devolves not only from the due process clause of the Fifth Amendment but also from the more stringent and overlapping standards of the Sixth Amendment.[11] This, however, does not alter the fact that the determination of whether the defendant's right to select his counsel was · protected depends upon the circumstances of the particular case. Once a fair and reasonable initial opportunity to retain counsel has been provided, and adequate counsel obtained, the court, mindful of the accused's interest in having counsel in whom he has confidence, is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case.

■ What is a reasonable delay necessarily depends on all the surrounding facts and circumstances. Some of the factors to be considered in the balance include[12]: the length of the requested delay[13]; whether other continuances have been requested and granted[14]; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court[15];

11. *See Scott v. United States*, 138 U.S.App.D.C. 339, 340, 427 F.2d 609, 610 (1970); *compare Gandy v. Alabama, supra*, 569 F.2d at 1320–23.

12. Other listings of factors, similar to ours in many respects, appear in *Gandy v. Alabama, supra*, 569 F.2d at 1324; *Giacalone v. Lucas*, 445 F.2d 1238, 1240 (6th Cir. 1971).

13. A motion for a continuance may not properly be denied on the *sole* ground that the time sought is longer than necessary to retain new counsel or to prepare for trial, *see* dissent at n.14, since unjustifiably long requests for continuances, if otherwise reasonable, can simply be granted for a shorter period of time. Yet, unjustifiably long requests may be indicative of some other defect in the request, such as a dilatory or purposeful intendment. *See Lee v. United States, supra*, 98 U.S.App.D.C. at 274, 235 F.2d at 221 (accused's third retained lawyer was granted leave to withdraw on account of a conflict of interest; court appointed attorney previously discharged by defendant; court refused to continue trial *over weekend* to allow defendant to retain counsel of his choice: held, discretion was abused and defendant's Sixth Amendment right violated).

14. *United States v. Brown*, 495 F.2d 593, 600 (1st Cir. 1974); *Giacalone v. Lucas, supra*, 445 F.2d at 1243; *Carey v. Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); *Smith v. United States, supra*, 53 App.D.C. at 54–55, 288 F. at 260–61.

15. *United States v. Mardian*, 178 U.S.App.D.C. 207, 213–14, 546 F.2d 973, 979–80 (1976) (*en banc*); *United States v. Brown, supra*, 495 F.2d at 600; *United States v. Inman*, 483 F.2d 738, 740 (4th Cir. 1973); *Giacalone v. Lucas, supra*, 445 F.2d at 1243; *Marxuach v. United States*,

whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived [16]; whether the defendant contributed to the circumstance which gives rise to the request for a continuance [17]; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel [18]; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature [19]; the complexity of the case [20]; and other relevant factors which may appear in the context of any particular case.

All of these factors are the appropriate subject of the trial court's attention when a continuance is sought. How the balance operates to obtain a result must

398 F.2d 548, 551 (1st Cir.), cert. denied, 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968); Smith v. United States, supra, 53 App.D.C. at 55, 288 F. at 261.

**16.** United States v. Oliver, 187 U.S.App.D.C. 230, 231, 571 F.2d 664, 665 (D.C.Cir.1978); United States v. Mardian, supra, 178 U.S.App.D.C. at 213–14, 546 F.2d at 979–80; United States v. Dilworth, 524 F.2d 470, 472 (5th Cir. 1975); United States v. Rodriguez Vallejo, 496 F.2d 960, 964–65 (4th Cir. 1974); United States v. Inman, supra, 483 F.2d at 740; United States v. Sexton, 473 F.2d 512, 514 (5th Cir. 1973); Marxuach v. United States, supra, 398 F.2d at 551.

By this, we do not mean that the court may inquire, without more, into the defendant's reasons for choosing a particular counsel. The defendant may choose a particular counsel for any reason that he deems important. However, one of the factors appropriate to testing whether a requested delay is reasonable is the good faith of the defendant; accordingly, a court must at times inquire into the reasons for the request for a continuance. Where defendant seeks to obtain an additional counsel or to substitute another counsel for his present one, the court must make certain inquiries into the reasons for the addition or change. This inquiry is appropriate only when a fair opportunity to retain counsel of choice has already been provided. Regardless of whether inquiry into the defendant's reasons for adding or substituting counsel is relevant in any particular case, the appropriateness of the court's decision to grant or deny a continuance may turn on other factors, mentioned in the text, which have more significance in the particular factual context. See dissent at text accompanying notes 34–41.

**17.** United States v. Rodriguez Vallejo, supra, 496 F.2d at 965; Lee v. United States, supra, 98 U.S.App.D.C. at 274, 235 F.2d at 221; Neufield v. United States, 73 App.D.C. 174; 182, 118 F.2d 375, 383, cert. denied, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1941).

**18.** United States v. Mardian, supra, 178 U.S.App.D.C. at 213–14, 546 F.2d at 979–80; United States v. Bragan, 499 F.2d 1376, 1379–80 (4th Cir. 1974); United States v. Brown, supra,

495 F.2d at 600; United States v. Harrelson, supra, 477 F.2d at 384; Giacalone v. Lucas, supra, 445 F.2d at 1243; United States v. Cozzi, 354 F.2d 637, 639 (7th Cir. 1965), cert. denied, 383 U.S. 911, 86 S.Ct. 896, 15 L.Ed.2d 666 (1966).

**19.** A showing of prejudice to the defendant's case is not a prerequisite to the granting of a continuance. See United States v. Johnston, 318 F.2d 288 (6th Cir. 1963). However, if some prejudice is identifiable, that finding would lend weight toward granting the requested continuance. It should be noted, however, that other considerations in any particular case, such as the interest in orderly procedures or the interest in avoiding manipulation or subversion of the process, may countervail a showing of prejudice and thereby justify the denial of a request for continuance.

Judge Robinson has thoughtfully considered the applicability of the harmless-error doctrine articulated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) to this case. In my view, however, this discussion is in the main unnecessary. The Supreme Court has indicated that a Sixth Amendment violation, as it implicates a substantial right of a party, cannot be harmless, Chapman v. California, supra, 386 U.S. at 23, 87 S.Ct. 824, and this proposition was forcefully affirmed in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978):

[T]his Court has concluded that the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." Chapman v. California, supra, 386 U.S. at 23, 87 S.Ct. at 827.

Hence, if the trial judge denies a request for a continuance where it would have been fair and reasonable to have done so to enable the defendant to retain or substitute counsel, and thereby violates the defendant's Sixth Amendment right, the violation is made out, and harmless error tests do not apply.

**20.** United States ex rel. Davis v. McMann, 386 F.2d 611, 620 (2d Cir. 1967), cert. denied, 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968); United States v. Mitchell, 354 F.2d 767, 769 (2d Cir. 1966).

depend on the circumstances of the particular case.[21]  For example, a long delay and a great deal of inconvenience may be tolerated if defendant's only counsel is suddenly lost by some unforeseen circumstance in a very complex case.  However, only a slight inconvenience or delay may be sufficient grounds for rejecting defendant's request for a continuance to enable him to retain an additional counsel in a simple case where he has already retained three or four other attorneys.

The evaluation of appellant's need for additional counsel, and the balance between the right to select counsel and the public's interest in the orderly administration of justice must all be carefully and delicately weighed; but sitting as a court of review, we afford substantial discretion to the trial court in judging that balance, and we will not reverse absent a showing of a deprivation of the defendant's right.

## II

Upon consideration of the standard outline above with respect to the instant facts, we find that the district court did not abuse its discretion, and did not violate defendant's Sixth Amendment rights.  Before engaging in this analysis, we set forth the background of this case, which is essential to a full understanding of the legal issues.[22]

Appellant is a physician, and has taught medicine and practiced in the District of Columbia since 1939.  Appellant was initially charged in May, 1974, with nineteen counts of unlawful distribution of controlled substances.  The essence of the charges was that appellant had in effect acted as a pusher in selling preludin and ritalin to numerous persons by writing prescriptions on mere requests *without giving proper physical examinations or taking proper medical histories*.  When he was first indicted, he hired Allen Hutter as his *sole* legal counsel.[23]

Sometime thereafter, appellant retained an' additional counsel, Ms. Dovey Roundtree, at Hutter's suggestion when appellant indicated he desired additional counsel.[24]  Although the evidence does not indicate the precise date when Roundtree was retained,[25] Roundtree was present when defendant was brought up for arraignment on October 23, 1974.[26]  It is fair to say that from the October 23, 1974 proceeding until Roundtree requested to withdraw from the case, Hutter acted as lead counsel.  At the October 23 proceeding, Hutter made the entire presentation on appellant's behalf.[27]

---

21.  *United States v. Poulack, supra*, 556 F.2d at 86;  *United States v. Bragan, supra*, 499 F.2d at 1378–79;  *Giacalone v. Lucas, supra*, 445 F.2d at 1240.  *See Gandy v. Alabama*, 569 F.2d at 1323–24, 1328.

22.  In my view, the different view of the record between Judge Robinson and those expressed here explains in large part the different result reached by the two opinions.

23.  Tr., April 26, 1976, at 6 (testimony of Dr. Burton).

24.  *Id.*

25.  Dr. Burton did not identify the precise date that he retained Roundtree; his testimony indicates that it was sometime after Hutter was retained and sometime before April, 1976 (*see, id.*, at 6–7).  Roundtree testified that "I first came into this case before there was a dismissal and not too long before there was a dismissal, and for the record, sometime in early 1975, I believe, it was."  (*Id.*, at 2).  This indicates that Roundtree was not acting as lead counsel at that time.

26.  Tr., Oct. 23, 1974, at 1.  Burton was not arraigned at this proceeding (*id.*, at 7).

27.  *Id.*, at 1–7.  On one occasion, Roundtree attempted to address the court, but Hutter quickly took over:

> THE DEPUTY CLERK:  Andrew F. Burton, in Criminal Action 596–74, you are charged with unlawful distribution of a controlled substance.  How do you wish to plead?
>
> MRS. ROUNDTREE:  Your Honor, I was wondering—
>
> MR. HUTTER:  Your Honor, I was wondering as Mrs. Roundtree was wondering if in light of these motions, which the Government has, the pleas to this indictment could be held up until that motion has been ruled on as a preliminary matter.  .  .  .

*Id.*, at 3–4.  The remainder of the discussion on this point was handled by Hutter, and Roundtree had nothing else to say at any point in this proceeding.  While we decline to speculate from the record, and in no way rely on such observations as a basis for decision, the inference is present that' the respective roles of

At the November 11, 1974 hearing on defendant's motion to dismiss the indictment, Hutter and Roundtree were both present, but Hutter presented and argued defendant's entire case.[28] At the April 16, 1975 hearing on the Government's motion to dismiss, *only* Hutter was present to argue defendant's position.[29] At the December 17, 1975 status call to set a trial date, both Hutter and Roundtree were present.[30] Hutter made the first statement for the defense, and thereafter both attorneys participated in setting the date, as a time convenient to each defense attorney, the Government's attorney, and the court was sought.[31]

The trial date was set for April 26, 1976. On April 23, Roundtree filed a motion "for leave to withdraw as co-counsel."[32] In that motion, she stated as reasons for seeking leave to withdraw:

> That a definite and broad difference of opinion with respect to the prosecution of this case presently exist between her and the client which would make it impossible and do violence to her sworn duty as a member of the Bar of this Court.

That she has discussed the matter with the client *and with the trial attorney, Mr. Hutter,* and verily believes that her presence and participation in this matter would create a conflict such as might reasonably jeopardize the best interest of the client as he pursues a full trial on the issues herein.

R. 24. This pleading, prepared and signed by Roundtree, clearly refers to Hutter as the *trial attorney.*

The April 26 proceeding began with the district judge inquiring into Roundtree's motion and the reasons which underlay it. Roundtree testified that when she first came into the case, she talked with Burton and Hutter, investigated on her own, and concluded that she had "a reasonable and justifiable basis within [her] own conscience mind and principles" to represent appellant.[33] After the case was reinstated, Roundtree stated that she found "hard facts"[34] which caused her to decide to withdraw.[35] She explained her reasons as follows:

> Both defense counsel participated in the December 17, 1975 proceeding; but it would not be apt to conclude from this part of the transcript, viewed in isolation, that one or the other was the lead counsel.

Hutter and Roundtree were not completely clear.

**28.** Tr., Nov. 11, 1974. Roundtree was silent throughout the entire proceeding.

**29.** Tr., April 16, 1975, at 1.

**30.** Tr., Dec. 17, 1975, at 1.

**31.** Hutter was the first attorney to speak for the defense position (*id.*, at 2). Both attorneys participated in the scheduling of the trial date (*id.*, at 2–3). Hutter first requested January or February (*id.*, at 3), but Roundtree was committed for the last two weeks in February. After the court excluded January and February due to its commitments, Roundtree suggested "March 20th or April" (*id.*). Hutter immediately interjected "Your Honor, if we are not going to do it in the first part of March, I would request the first part of April" (*id.*). The trial started April 27, 1976.

Hutter announced the defense intention to file speedy trial motions (*id.*, at 3–4). When the court asked how long the case would take, it was Roundtree who responded: "Two to three weeks, Your Honor. Under the Supreme Court decision, I think we have to bring on some substantial witnesses with respect to certain matters," (*id.*, at 4), whereupon the status call was concluded.

**32.** R. at 24. Burton testified that he first received notice that Roundtree wanted to withdraw on April 21, a Wednesday, when Hutter called him. Unable to reach Roundtree by telephone, he sent her a telegram, requesting an appointment. Roundtree met appellant, according to his testimony, during the evening of April 22. He described the meeting:

> At this time, she informed me she would like to withdraw from the case. I asked her why, but her reasons did not seem satisfactory to me. I asked her to continue in the role that she wished, but she refused.

Tr., April 26, 1976, at 7.

**33.** Tr., April 26, 1976, at 2–3.

**34.** *Id.,* at 4.

**35.** Roundtree's full statement was as follows: When it was re-instated, *we got back after the time with counsel as associate counsel,* Dr. Burton began to do some research, some reading, and we obtained Mr. Spencer Price who is a private investigator, and we began to then get and develop what I gleaned to be hard facts.

I have discussed it with Mr. Hutter; I have discussed it with the Doctor, what is the defense in this case. I just have to speak frankly . . .. I find that I am not only frustrated, but with twenty-four years at the bar, I have a total inaccurate and in violation of what I know to be, that I believe that *Mr. Hutter and I are now working at cross purposes.*

I do not believe from where I see that I have a defense.

I have talked to—at my home, I think it was a Wednesday night—at length with the doctor of my views in this case.

I think under the Cannons [sic] *for me to have such view, for Mr. Hutter to have his view, we have the poor Dr. Burton somewhere in the middle. I don't think there is a reconciliation of it.*

[Roundtree then refers to a defense which had figured importantly in her decision to represent Burton.] I think that to this extent, perhaps I was misled; maybe I am naive, but in that posture, *I do not think I would be either fair to Dr. Burton to be associate counsel; I couldn't be associate counsel, and just sit at the table. That is not my role as a lawyer.*

I am greatly disturbed about the posture of the case, and as I read the Cannons [sic] of Ethics and my professional responsibility, I am more and more persuaded, I have no alternative, I will go down the road in my thinking in my persuasion based on the things I have told this Court, and I think Mr. Hutter is going down quite a different road.

THE COURT: You could not be effective counsel for Dr. Burton under those circumstances; you don't think he has a defense.

MISS ROUNDTREE: That is my view.
Tr., April 26, at 4–5 (emphasis added). Roundtree's explanation refers to a disa-

greement between counsel for the defense. It is difficult to perceive why, if Roundtree was lead counsel, the disagreement between Hutter and Roundtree was even pertinent: if Roundtree was the lead counsel, then the views of the associate counsel, if different, would not be of severe concern. Burton was free to participate in the selection of a defense. Instead of choosing the defense proposed by Hutter, he could have chosen the defense offered by Roundtree. Burton had full power to rely on one counsel and to agree to the withdrawal of the other. Burton's acquiescence in Roundtree's departure and reliance upon Hutter for the presentation of the defense can hardly be viewed as a denial of defendant's right to have the lead counsel he wanted. Indeed, Burton simply exercised his choice between alternative defenses proposed by his two counsel. Whatever definition we ascribe to *"lead"* counsel, it is apparent that Hutter was agreeable to advancing some defense that Burton agreed with and that Roundtree was not. Finally, Roundtree's statement that it would be unfair "to be associate counsel" is not a conclusive indicator of anything: she might be referring either to the unfairness of becoming associate counsel after having been retained as lead counsel, or when she was antagonistic to promoting the defense that Burton desired, to the unfairness of remaining as associate counsel after having been retained in that capacity. Whatever characterization may be given to Hutter and Roundtree—whether they were co-equal, or whether one was lead counsel and the other subordinate—the fact is that Hutter was willing to present the defense that Burton wanted, and that Burton in the end received the representation that he desired. Hutter was hired first, was fully informed as to the case, was fully prepared, and was available to proceed with a defense that Roundtree was not

---

*Id.,* at 4 (italics added). The italicized portion of the statement might be relevant to whether Roundtree or Hutter was lead counsel, but the statement is so cryptic as to be virtually meaningless.

Burton also stated:

After the case was reopened. [sic] There was a meeting in my office with Mr. Hutter and Miss Roundtree, at which time the case and the trial strategy was fully discussed and was reviewed [sic].

*Id.,* at 7. This does not indicate who was intended to act as lead counsel.

willing to espouse. It also appears that Hutter conducted the trial after Roundtree's withdrawal with the consent of the defendant in such a manner that has not evoked any claim of error on appeal.

After Roundtree's statement, the court asked Hutter if he was ready to proceed. He responded:

> Yes, Your Honor. It is not incumbent to find at this time. I don't think there is any problem, any statements that the doctor might make now that would pose any problem. *I do respect his relationship with Miss Roundtree.* I think he could best respond to the Court.

*Id.,* at 6 (emphasis added).[36]

Acting upon Hutter's invitation, the court asked appellant to speak to the matter. Appellant stated:

> [W]hen I was indicted in 1974, I hired Allen Hutter as lead counsel. After the metting [*sic*], I thought a skilled trial lawyer would be helpful and necessary if [*sic*] defending this case, especially one familiar with the ghetto community.
>
> Mr. Hutter presented Dovey Roundtree to me. I was well please, [*sic*] and indeed, an excellent lawyer.

*Id.* Burton did not say he hired Roundtree as the lead counsel.

The statement that a "skilled trial lawyer would be helpful and necessary [in] defending this case" does not mean that the newly-retained attorney was expected to act as lead counsel, particularly if the defendant was already being served by a skilled trial attorney such as Hutter. Burton's statement can be read no further than evidencing a belief that "two skilled attorneys are better than one," and cannot be read as a statement that he intended the newly-retained attorney to act as the lead counsel.

Burton also explained his reasons for retaining Roundtree:

> Although Mr. Hutter is a well qualified lawyer, I do not feel he is able to handle the case alone without the *assistance* of

someone who has the skill as with Attorney Roundtree. I am behind the competence, experience and reputation of Attorney Roundtree. I do not want her to stay since she doesn't want to create an atmosphere of inadequacy, but getting a seasoned trial lawyer to replace her is difficult. I have to secure a new lawyer who must of necessity become familiar with the case.

*Id.,* at 7–8 (emphasis added). Here again, appellant indicates that Roundtree was retained to *assist* Hutter, not to take over the conduct of the trial. The statement that "she doesn't want to create an atmosphere of inadequacy" is some indication that this skilled trial lawyer was not engaged by Burton to employ her full talents. Though Burton's explanation contains references to obtaining a "seasoned trial lawyer," it is quite sensible for Burton to desire the best lawyer obtainable, even though that lawyer might perform as associate counsel. That he considered Hutter needed *assistance,* as opposed to supervision, was again emphasized by Burton in further testimony:

> From my observation at the beginning, I felt Mr. Hutter needed *assistance.* Since I relate to the black community, I spoke to him and he brought in Attorney Roundtree who is capable.
>
> Now, I must confess I do not know of an experienced trial lawyer *to assist Mr. Hutter* in my trial. This would take some time to arrange, if allowed, and the new lawyer would have to acquaint himself with the case.
>
> I, therefore, request Your Honor to grant an extension of time of thirty to sixty days before the case comes up for trial in order to assist and a judgment can be made.

*Id.,* at 8 (emphasis added). To say that someone needs "assistance" is far different from saying someone needs replacement as lead counsel. Burton wanted an experienced, skilled, and seasoned trial lawyer to *assist* Hutter. At no point does Burton

---

**36.** Hutter's statement does not clarify one way or the other what relationship Roundtree bore to appellant.

state that he intended Roundtree to conduct the trial.[37]

After the court made inquiries of Government counsel regarding the Government's opposition to the granting of a continuance, the court made inquiries of Hutter. Hutter's statement reaffirms Burton's testimony:

> [Appellant] did want a black attorney *to assist* for problems of relating to witnesses, relating to the jury, because of the nature of the community, and that was the primary object that he had in mind.

*Id.,* at 12 (emphasis added). None of the factors to which Hutter alludes require that Roundtree have been hired as lead counsel. Most importantly, it appears that the court, which was very familiar with the case, believed that appellant simply wanted an additional attorney, not a new lead attorney:

> In other words, Dr. Burton wants a black attorney—well, I don't know.
>
> [T]his is certainly a unique situation where the defendant states on the record in open Court that he wants an *additional attorney* because the *additional attorney* would happen to be black. It seems not to be very good. The jury shouldn't consider on the color of the defendant whether he be pink, blue, green.

*Id.,* at 12, 13 (emphasis added). Dr. Burton then explained why he wanted a black attorney: he stated that blacks relate better to blacks.[38] The following dialogue ensued:

COURT: You want a black attorney to make a favorable impression.

BURTON: Just the converse with these people, the witnesses and all I called.

Your Honor, may I say this, I am a citizen of this country and you represent the government and whatevéryou [*sic*] say, I will abide by it really.

COURT: I believe this case will go forward, Dr. Burton.

BURTON: All right, sir.

COURT: You have, Miss Roundtree, my permission to withdraw. I grant your motion, Miss Roundtree.

*Id.,* at 14.

In the April 26 proceeding, the court also inquired into the Government's reasons for opposing the continuance. Government counsel indicated that the Government was prepared to go to trial, that it had assembled all the witnesses, that it would be a burden to reassemble them at a later date, and that the Government's attorneys' caseloads had been adjusted to accommodate the scheduling of this case.[39] The trial lasted eight trial days,[40] and the Government introduced eleven witnesses[41] and 2300 signed prescriptions.[42] Government counsel emphasized his prior contacts with Hutter:

> Mr. Hutter should be prepared to go to trial. *He* has got a lot of the information. I gave *him* the grand jury testimo-

---

37. Burton stated that he did not want Roundtree to withdraw from the case, but he also said that he was not insisting that she remain. In other words, Burton acquiesced in Roundtree's requested leave for withdrawal:

> I do not want Miss Roundtree to drop out of the case. I am concerned with her continuing to represent me in view of the position she has taken within the last several days.

*Id.,* at 8. The court said to Roundtree:

> Well, under the circumstances, I think Dr. Burton wouldn't insist that you remain in the case.

*Id.,* at 9. Burton then interjected:

> No, sir, I wouldn't insist for two reasons: first, she doesn't want to be in;. secondly, I am a Christian, I don't believe those who reject you for anybody to be forced into anything at such time.

*Id.* As we find no violation of appellant's constitutional right to the assistance of counsel for

his defense, we need not reach the question of whether appellant's consent to proceed with Hutter as his counsel amounted to a waiver of his right to any additional counsel. It should be noted, however, that Burton was less than forceful in asserting his need or right to obtain additional counsel.

38. *Id.,* at 13.

39. *Id.,* at 9–10.

40. After the initial hearing on April 26, 1976, the trial lasted through the following days: April 27, 28, and 29; and May 3, 4, 5, 6, and 10.

41. *See* Tr., April 27, 1976, at 62; Tr., April 28, 1976, at 256; Tr., April 29, 1976, at 495; Tr., May 3, 1976, at 681.

42. Tr., May 10, 1976, at 1385.

ny. *We* have been in contact in terms of what the facts are. *He* knows what we have.

*Id.,* at 10 (emphasis added). This statement, as do the others made by the various declarants in the April 26 hearing, suggests that Hutter had been conducting the case all along and was intended to do so at trial.

To recapitulate, Burton, in all of his testimony, did not say that he hired Roundtree as lead counsel. Indeed, the plain reasonable interpretation to be given his testimony is that he wanted a skilled, black trial attorney to *assist* Hutter in the conduct of his defense. Even if Roundtree expected to conduct the trial, it was Burton who retained both counsel and who had the authority to specify who would conduct it.

The reasons given by Roundtree for wanting to withdraw were varied. Roundtree noted a disagreement as to the viability of any defense between herself and Hutter with Dr. Burton in the middle; but if Roundtree was lead counsel, what Hutter thought would not be controlling, as he would not be conducting the trial. She also indicated a conflict between herself and her client. We do not and need not speculate beyond the record into Roundtree's beliefs, as the record reasonably supports the conclusion that Roundtree was not the lead counsel. In reaching this conclusion, it is particularly significant that Roundtree's motion to withdraw refers to *Hutter* as the *trial attorney.*

For these reasons and others mentioned earlier, we conclude that the record does not support the conclusion that Roundtree was hired by Burton with the shared expectation that she would function as lead counsel. Instead, the record points to the conclusion that Roundtree was intended to assist Hutter in the conduct of the trial, and that Hutter would continue in the lead role he had performed throughout the pre-trial period. That Burton would want to retain a skilled black attorney to sit at counsel table, perhaps examine a few witnesses, and otherwise assist Hutter, is perfectly understandable and reasonable. But when the district court's ruling is viewed against

this background, it becomes apparent that the district court did not abuse its discretion in denying Burton's request for a continuance.

### III

Although the record does not identify with specificity how the trial judge considered the various factors which determine whether the defendant was afforded his right to choose his own counsel, we are satisfied that the district court under these circumstances perceived the salient factors and evaluated them in a manner within the zone of his proper discretion.

It is true that no prior continuances had been requested or granted but Burton's motion of October 23, 1974, to dismiss the indictment, had delayed the trial of the case until April 1976. That motion was based on this court's decision in *United States v. Moore,* 164 U.S.App.D.C. 319, 505 F.2d 426 (1974), which held an indictment identical in theory to Burton's to be invalid. However, our decision in *Moore* was subsequently reversed by the Supreme Court, *United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). This held, in effect, that Burton's indictment was also valid. Nothing in the record, however, suggests that appellant improperly contributed to any circumstance which caused Roundtree to request leave to withdraw from the case. Nor does the record suggest that the continuance was requested for the specific purpose of disrupting or undercutting the orderly administration of justice. Had that been the case, the district judge would have denied Roundtree's request for leave to withdraw. It is a fact, however, that Hutter told Burton five days before the scheduled trial date that Roundtree was withdrawing. When he was so advised, he should have immediately started to obtain additional counsel if he considered that to be necessary. The record, however, does not indicate that any such attempt was made. Had he acted promptly it might not have been necessary for him to request the lengthy delay that the court found to be unreasonable under the circumstances.

*No error* in the actual conduct of the trial is claimed to exist, and no identifiable prejudice in the trial of the case resulted to defendant by virtue of the denial of the continuance. There is no suggestion that any possible defense was stifled or weakened because the continuance was not granted. The arguments advanced by the defense centered around attacks on the credibility of the prosecution's witnesses and some appeal to sympathy because of Burton's age and his long practice as a doctor. Indeed, the record shows that Hutter fulfilled his duty to his client as a diligent, conscientious advocate. The record is replete with examples of effective representation. This is not to say that a different strategy might have been somewhat more effective, or that some other counsel might have done a better job; however, there can be no doubt that Hutter's representation of appellant far exceeded the standard of assistance that is constitutionally required.

▬ The question here, however, is whether appellant was afforded his constitutional right to select his own counsel. In determining whether the right was violated, the existence of prejudice is only one of the factors to consider. The existence of prejudice to the case is not a prerequisite to a constitutional violation in this context.[43] But in appraising this particular factor, the inability of appellant to prove prejudice to his defense, and the absence of prejudice

apparent to us in the record suggests that the district court properly balanced the competing considerations.

▬ It may be that having a black attorney present at the trial, as appellant planned, might have enabled appellant to relate better to the jury, the witnesses, or the court, as Burton expressed it. But appellant chose Hutter to conduct his defense as lead counsel, and this is precisely what he received. Had Roundtree been the lead trial attorney, appellant clearly would have had a stronger case for a continuance—but with her view that Burton did not have a defense,[44] a guilty plea might more possibly have been the result.[45] As it was, appellant had other competent counsel, fully familiar with the case and prepared and ready to try it, available to present his defense. Crucially, it was the counsel he had chosen as lead trial counsel. This is a significant and weighty factor, which the district court unquestionably took into account.[46]

▬ The dissent argues that "circumstances beyond appellant's control invalidated part of the right to choose his defense team and thus the trial court had no discretion to prevent appellant from regaining it." Dissent at note 45. Thus, the dissent claims that defendant never was given a fair opportunity to secure counsel of his own choice. Dissent at —— of 189 U.S. App.D.C., at 500 of 584 F.2d. This argument is based on a quick shift from "de-

43. *See* note 19 *supra*.

44. Tr., April 26, 1976, at 4–5.

45. *Id.*, at 6.

46. The dissent would attach no significance to the fact that the remaining counsel was the lead counsel: "[I]f a [a defendant] becomes objectively or subjectively dissatisfied with one important member of his team, his entitlement to a continuance to secure a replacement normally is no different than if the member in question was his only counsel." Dissent at —— of 189 U.S.App.D.C., at 508 of 584 F.2d. When a defendant is initially afforded the opportunity to retain counsel, he may retain as many as he can afford (subject to the power of the court to limit the number that may participate in court). And a defendant may thereafter add as many attorneys as he desires, so long as he does not acquire counsel to disrupt the or-

derly process of justice. However, when on the eve of trial, a defendant seeks a continuance to add or substitute counsel which necessitates a rescheduling of the trial, many factors are relevant to whether the request for delay is reasonable. If the defendant has other competent counsel prepared to go to trial, then the court, when considering all the factors, need not tolerate as much inconvenience as in the case where defendant has no other counsel prepared to go to trial. This is not to say that defendant's rights differ in one case or the other; this is only to say that the result of the balancing may differ when the circumstances are different. And it goes without saying that whether the remaining counsel is prepared to go to trial may be substantially affected by whether he was retained as lead or associate counsel.

fense team" to "counsel" and they are not completely interchangeable. There are a variety of situations that can be imagined where defendant loses access to one of his chosen counsel by circumstances beyond his control. Yet in our view, the fact that circumstances beyond the defendant's control prevented him from utilizing the services of part of his defense team does not, by itself, conclusively indicate that defendant was denied a fair opportunity to select adequate counsel. This is one important factor, and carries very great weight particularly if circumstances beyond defendant's control deprive him of his only counsel. Suppose that a defendant retains three attorneys, and that all are prepared and qualified to try the case. Two days before trial, one of the attorneys is suddenly taken ill, and is unable to appear at trial. This factor is certainly beyond defendant's control, but depending on the circumstances of the case, we are not prepared to say that denying a continuance until the third attorney's health is restored is an abuse of discretion. *See Giacalone v. Lucas,* 445 F.2d 1238 (6th Cir. 1971). Or suppose that a defendant retains an attorney far in advance of trial, and the attorney's obligations in other cases subsequently prevents scheduling of a reasonable trial date. This development is certainly beyond defendant's control, but depending on the circumstances of the case, we are not prepared to say that denying a continuance until the attorney's schedule is free is an abuse of discretion and violative of defendant's Sixth Amendment right. *See United States v. Poulack,* 556 F.2d 83 (1st Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct.

613, 54 L.Ed.2d 480 (1977). Defendants must be given an initial, fair and reasonable opportunity to select counsel. Burton received this opportunity, and enjoyed the services of both Hutter and Roundtree for nearly two years. When Roundtree was granted leave to withdraw, she considered the "Canons of Ethics" to which she was bound as a lawyer would not permit her to go forward with the defense that Burton and his counsel had agreed upon, *see* text at ―――― of 189 U.S.App.D.C., at 493–495 of 584 F.2d, *supra.* The circumstances surrounding that withdrawal, including whether Burton contributed to the withdrawal, were the proper subject of the trial court's inquiry. The fact that Burton may not have contributed directly to the withdrawal does not, by itself, determine that Burton's Sixth Amendment rights were violated. We do not believe that every time circumstances beyond the accused's control result in the loss of one member of the defense team that it follows automatically that the defendant did not receive a fair and reasonable opportunity to select his own counsel.

The district court was in a good position to judge the inconvenience to the litigants, the witnesses, counsel, and the court from granting such a continuance. Any delay might result in some inconvenience, and this case was no exception to that rule.[47] Given this, plus the crucial fact that appellant had competent counsel there whom he had retained to conduct the trial as lead counsel, we cannot say that the district court abused its discretion.[48] In essence, appellant contends that a continu-

---

**47.** The dissent criticizes the lack of specific record evidence listing the inconvenience which would be encountered from granting the continuance (Dissent at ―――― of 189 U.S. App.D.C., at 510 of 584 F.2d). The Government did refer to the "time to . . . get all the witnesses together." Tr., April 26, 1976, at 10. It would have been better for our review if the specific nature of the inconvenience had been set forth by the Government and/or sought out by the trial judge. Here, we do not rely on the amount of inconvenience enumerated in the record as the principal factor in the balance. Rather, this is one factor which lends weight toward affirming the district court, inas-

much as defendant did receive the service of his lead counsel.

**48.** It is also stated in the dissent that the district court predicated its disposition on its disapproval of what it deemed to be a "singular desire on appellant's part to engage a black trial attorney as one of his counsel" (Dissent at ―― of 189 U.S.App.D.C., at 510 of 584 F.2d). In our view, the record does not bear out this characterization of Burton's asserted position. The trial judge noted that, in his view, the defendant wanted "an *additional* attorney because the *additional* attorney would happen to be black" (Tr., April 26, 1976, at 13; emphasis added). As noted earlier, the reasons for re-

ance should have been granted to allow additional counsel to assist in a trial already adequately prepared by earlier-retained counsel. This is not a strong case for granting a continuance, and the district court did not abuse its discretion.[49] To have delayed appellant's trial further would have amounted to an unreasonable delay under these circumstances.

Since defendant's constitutional rights were not violated, the judgment of the district court is

*Affirmed.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, dissenting:

Appellant challenges the District Court's denial of his motion for a continuance to enable him to obtain replacement counsel after the court permitted one of his existing counsel to withdraw on the eve of trial. My colleagues affirm, applying an abuse of discretion standard to the totality of the circumstances.[1] Though that analysis is impeccable when a trial court has adjudged the time necessary to prepare for trial, or when the continuance was requested after a fair opportunity to retain counsel had already been provided, it is, in my view, unacceptable when such an opportunity has been set for naught by circumstances beyond the accused's control. That situation—which is the case before us—is directly analogous to denial of the initial opportunity to select one's lawyer, and I believe trial courts have no discretion to allow the undoubted social

taining counsel are not subject to approval or disapproval by this court, and we do not see that the district judge denied the request for a continuance simply because he might have thought the defendant's personal reasons for retaining a particular attorney were without merit. We think that the district court recognized that Hutter was the lead counsel and that defendant's interest in having an additional attorney assist Hutter—regardless of who that additional attorney was—did not justify delaying the trial at that late date.

**49.** The dissent contends that *United States v. Mardian*, 178 U.S.App.D.C. 207, 546 F.2d 973 (1976) (*en banc*) and *Lee v. United States*, 98 U.S.App.D.C. 272, 235 F.2d 219 (1956), read together, control this case. We disagree. The resolution of cases involving the denial of a request for a continuance depend on the particular circumstances. *Mardian* is distinguishable on several grounds. First, the counsel for defendant who remained after co-counsel was taken ill had not been personally retained by defendant (178 U.S.App.D.C. at 213, 546 F.2d at 979). Second, Mardian stated in court that he had taken special care in selecting the counsel who became sick, who was very definitely his lead counsel (*id.*). Third, even though the court recognized that defendant bore no responsibility for his lead counsel's absence, the court noted two factors which made defendant's motion unique—(a) joinder of Mardian with the other defendants was not supported by evidence as strong as that against the other defendants (178 U.S.App.D.C. at 214, 546 F.2d at 980); and (b) *the Government did not oppose Mardian's motion* (*id.*). The court gave this last factor the highest importance, as it demonstrated that granting the motion would not have caused undue disruption. *Lee* is distinguishable on its facts as well. Defendant's two retained counsel requested, with defend-

ant's consent, permission to withdraw from the case. Defendant advised the judge that he had obtained a third attorney who was ready for trial. Permission to withdraw was granted by the court. When the new attorney appeared before the trial judge, he announced that he was troubled about a possible conflict of interest. The court, after hearing some of the circumstances, granted permission to the new attorney to withdraw and appellant requested a short two day continuance over the weekend to obtain new counsel. The court refused this request and then directed one of the two attorneys who had been allowed to withdraw, to conduct the defense. It became clear at that time that defendant objected to either of the two prior attorneys representing him and that both prior counsel desired to comply with appellant's position. The Court of Appeals stated that appellant bore no responsibility for being without counsel at the beginning of trial. Thus, under these circumstances, the defendant was denied a reasonable request to select counsel and was never represented by counsel of his own choosing. 98 U.S.App.D.C. at 274, 235 F.2d at 221. *Lee* is a far cry from the facts here. Thus, *Mardian* is distinguishable on several grounds, and *Lee* involved a situation where defendant was denied a fair opportunity to choose his own counsel after he discharged his original attorneys and had *no one* available to represent him who did not have a disqualifying conflict of interest. These two cases, read together, do not indicate how the balance of the various factors should be performed in a case where the circumstances are markedly different.

**1.** Majority Opinion (Maj.Op.) at —— of 189 U.S. App.D.C., at 490 of 584 F.2d.

need for expeditious administration of criminal justice to hold sway over the fundamental Sixth Amendment right freely to choose counsel.[2]

Even if the District Court had discretion to deny the opportunity to retain new counsel in light of the factors enumerated in the majority opinion, that discretion was not exercised in this case because the court relied solely on one improper consideration. Thus I think error was committed. I am unable, moreover, to shed reasonable doubts about whether the error prejudiced appellant in his unsuccessful endeavor to win an acquittal on the drug charges on which he was prosecuted.[3] Accordingly, I would reverse appellant's conviction and remand the case for a new trial.

## I. THE BACKGROUND EVENTS

Appellant, a physician, had practiced his profession in the District of Columbia since 1939. When, in 1974, he was subpoenaed to appear as a witness before a grand jury, he retained Allen M. Hutter as his sole counsel. Later that year, appellant was charged in a 19-count indictment with unlawful distribution of controlled substances.[4] The gravamen of the indictment was that he had effectively sold preludin and ritalin to numerous persons by writing prescriptions without benefit of proper physical examinations or medical histories. Sometime thereafter, appellant requested Mr. Hutter to seek the addition of a "skilled trial lawyer."[5] Dovey J. Roundtree was contacted and retained in the shared expectation that she would serve appellant at trial.

As fate would have it, appellant was not destined for an early trial. The grand jury returned a second indictment charging 35 drug violations, and then a superseding 35-count indictment; the Government dropped the first two indictments and appellant—with Ms. Roundtree first appearing as counsel—moved for dismissal of the third. On authority of this court's holding in *United States v. Moore*,[6] the District Court granted the motion without prejudice, but on the Government's appeal the case was remanded for further proceedings in light of the Supreme Court's pending review of *Moore*.[7] Eventually, the Court reversed the decision in *Moore*,[8] whereupon the District Court vacated its order of dismissal and set the case for trial.

Five days before trial was to commence, appellant learned from Mr. Hutter that Ms. Roundtree had indicated a desire to terminate her services. Appellant attempted to contact her but did not succeed until she responded to his telegram late the following day, a Thursday. Despite his entreaties, she refused to continue as counsel, and on Friday she filed a motion for leave to withdraw. On Monday morning, the date upon which trial was to begin, the District Court heard the motion. Ms. Roundtree explained that "I do not believe . . . that I have a defense," adding that she and Mr. Hutter were "working at cross-purposes."[9] In response to the court's ensuing inquiry, Mr. Hutter stated that he was ready for trial but that he would like appellant to speak.

Indulged that opportunity, appellant declared that he was "surprised and shocked" by Ms. Roundtree's decision and "anguish[ed] because my reputation and livelihood are at stake."[10] He explained that he

---

2. Discussed in Part II *infra*.

3. Discussed in Part IV *infra*.

4. Pursuant to the Controlled Substances Act § 401, 21 U.S.C. § 841(a) (1976).

5. Joint Appendix (J.App.) 6.

6. 164 U.S.App.D.C. 319, 505 F.2d 426 (1974), *rev'd*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975). There we held that a licensed physician registered under the Controlled Substances Act as a prescriber of methadone was not subject to prosecution under § 841 for dis-

pensing narcotic drugs for illegitimate purposes.

7. The Supreme Court had granted a writ of certiorari on February 19, 1975. 420 U.S. 924, 95 S.Ct. 1116, 43 L.Ed.2d 392 (1975).

8. *Supra* note 6.

9. J.App. 4–5.

10. J.App. 7.

had picked Ms. Roundtree both because of her experience [11] and because she, unlike Mr. Hutter, was black:

Although Mr. Hutter is a well qualified lawyer, I do not feel he is able to handle the case alone without the assistance of someone who has the skill [of] Attorney Roundtree . . . .. I do not want her to stay since she doesn't want to create an atmosphere of inadequacy, but getting a seasoned trial lawyer to replace her is difficult. I have to secure a new lawyer who [must] of necessity become familiar with the case.[12]

*　*　*　*　*　*

From my observation at the beginning, I felt Mr. Hutter needed assistance. Since I relate to the black community, I spoke to him and he brought in Attorney Roundtree who is capable.[13]

*　*　*　*　*　*

I, therefore, request Your Honor to grant an extension of time of thirty to sixty days before the case comes up for trial . . . ..[14] I do not want Miss Roundtree to drop out of the case [but] I am concerned with her continuing to represent me in view of the position she has taken within the last several days.[15]

The Government opposed continuance on the grounds that many weeks had been spent in preparation, that many witnesses had been summoned and that appellant should have been ready for trial. The

court, noting Mr. Hutter's competence and experience—which no one denies—felt that

this is certainly a unique situation where the defendant states on the record in open Court that he wants an additional attorney because the additional attorney would happen to be black . . . ..

As a matter of fact, for the jury, Dr. Burton, to feel sympathy for you or decide the case on the basis of your attorney's color and your color or Mr. Kogan [Government counsel] or my color or anything like that, that isn't a consideration that the jury could [ ] properly weigh.[16]

Responding personally, appellant insisted that "[i]n the black community, blacks relate to blacks better, some relate better," [17] but added, "I am a citizen of this country and you represent the government and whatever you say, I will abide by it really." [18] The judge then ordered trial to commence on the next morning, and after eight days of trial the jury convicted on 28 counts.[19]

## II. THE RIGHT TO COUNSEL OF CHOICE

### A. *General Principles*

The Sixth Amendment guarantees invaluable procedural safeguards to an accused, including prominently the "right to have the Assistance of Counsel for his defence." [20] And it is firmly established that as an integral and important part of that right "a defendant should be afforded a fair

---

11. Ms. Roundtree had been a member of the bar for 24 years. Mr. Hutter's tenure at the bar was 15 years, 11 in the District of Columbia.

12. J.App. 7–8.

13. J.App. 8.

14. It seems clear that a justified motion for a continuance with a view to securing new or additional counsel may not be denied merely because the time sought is longer than the court deems necessary. That is the more so when the request comes from an accused untutored in the ways of the law. The correct response is to allow a reasonable time for retention of counsel desired—normally a few working days—with extensions if the accused can show that he has attempted in good faith but unsuccessfully to arrange acceptable representation. Once counsel is engaged, the court could ask for an estimate of the time he needs

to prepare for trial, and if dissatisfied with the response the court could require justification. The court would of course remain able to exercise its discretion to deny unreasonable requests.

15. J.App. 8.

16. J.App. 13.

17. J.App. 13.

18. J.App. 14.

19. Seven of the 35 counts had been dismissed pursuant to a motion by the Government as trial started.

20. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and

opportunity to secure counsel of his own choice."[21] It follows that the wheels of justice may not grind so swiftly or so finely that an accused financially able to engage counsel is deprived of the chance to do so.[22]

Consequently, while continuance of a trial is a matter normally within the discretion of the court,[23] the Sixth Amendment imposes limits when the continuance is sought for purposes of retaining counsel.[24] "Proper exercise of this discretion," says the Seventh Circuit, "requires a delicate balance between the defendant's right to adequate representation of counsel at trial, and the public interest of a prompt and efficient administration of justice."[25] And the Supreme Court has warned that a continuance may not be denied if more time is needed to afford the accused "a reasonable opportunity to employ and consult with counsel."[26]

Once that initial opportunity has been fully provided, however, the court, with due

district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S.Const. amend. VI.

21. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158, 162 (1932); accord *Crooker v. California*, 357 U.S. 433, 439, 78 S.Ct. 1287, 1291–1292, 2 L.Ed.2d 1448, 1454 (1958); Maj. Op. text at notes 4–6; see cases cited notes 35–36 *infra*. See also *Gideon v. Wainwright*, 372 U.S. 335, 341, 83 S.Ct. 792, 794, 9 L.Ed.2d 799, 803 (1963) (*Powell* applied Sixth Amendment standards of right to counsel).

22. See *United States v. Inman*, 483 F.2d 738, 739–740 (4th Cir. 1973), *cert. denied*, 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974).

23. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 931 (1964). See generally Note, *The United States Courts of Appeals: 1976–1977 Term Criminal Law and Procedure*, 66 Geo.L.J. 203, 414–418 (1977). Though a motion for a continuance based on the attorney's need to prepare more adequately for trial implicates the right to counsel, trial courts must be granted considerable discretion in that situation because a determination of the time necessary calls for the application of informed wisdom. No such "judgment call" is required by a decision whether circumstances have stolen away an accused's initial chance to choose the lawyer to whom he will in large part entrust his freedom. See text accompanying notes 41, 51 *infra*.

24. Maj.Op. text at note 10; see *State v. McFadden*, 292 N.C. 609, 234 S.E.2d 742, 744 (1977) ("when a motion to continue is based on a constitutional right, the question presented is a reviewable question of law"); cf. *United States v. Dinitz*, 538 F.2d 1214, 1222 (5th Cir. *en banc* 1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977) (no abuse in allowing one cocounsel to withdraw where defend-

ant had "ample opportunity to secure another attorney"). The Supreme Court, reminding us that continuances are ordinarily within the trial judge's discretion, in the same breath has admonished that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite, supra* note 23, 376 U.S. at 589, 84 S.Ct. at 849, 11 L.Ed.2d at 931. See also *Powell v. Alabama, supra* note 21, 287 U.S. at 59, 53 S.Ct. at 60, 77 L.Ed. at 165–166.

25. *Giacalone v. Lucas*, 445 F.2d 1238, 1240 (7th Cir. 1971), *cert. denied*, 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972).

26. *Chandler v. Fretag*, 348 U.S. 3, 10, 75 S.Ct. 1, 5, 99 L.Ed. 4, 10 (1954). Of course, the accused has no "absolute right to a *particular* counsel," *United States v. Poulack*, 556 F.2d 83, 86 (1st Cir. 1977) (emphasis in original), and may not insist upon one so situated that he could not try the case within a reasonable space of time. *Id.* at 85–86 (no abuse of discretion in ordering substitution of counsel where, after previous three-month continuance, original counsel still would not have been available for two more months); *United States v. Harrelson*, 477 F.2d 383, 384 (5th Cir.), *cert. denied*, 414 U.S. 847, 94 S.Ct. 133, 38 L.Ed.2d 95 (1973) (denial of requested change of counsel three days before trial was not an abuse of discretion where new counsel was about to be hospitalized and had not in fact accepted the case); *United States v. Upshaw*, 448 F.2d 1218, 1224 (5th Cir. 1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972) (trial court did not abuse its discretion in denying change of counsel five days before trial where no reason was given and new counsel was in hospital and would remain there for 18 days). The trial judge in *Poulack* appropriately handled the situation by offering the accused two weeks within which to choose a substitute and then, when the accused refused to do so, by appointing counsel who had, after another short continuance, a total of seventeen days within which to prepare.

regard for the accused's interest in counsel in whom he maintains confidence, is generally free to deny a continuance that would unreasonably inconvenience the judge or the trial participants.[27] As we observed long ago, "the right to select [one's] own counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same."[28] An accused who is dilatory, or one who acts in bad faith, need not be rewarded with further time once he has squandered away his fair opportunity.[29]

**27.** *Giacalone v. Lucas, supra* note 25, 445 F.2d at 1240; *Releford v. United States,* 288 F.2d 298, 301 (9th Cir. 1961); see *United States v. Anderson,* 165 U.S.App.D.C. 390, 401–403, 509 F.2d 312, 323–325 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975). Some courts view the failure to retain satisfactory counsel within a reasonable time as an implied waiver of the right freely to choose counsel. *E. g., United States v. Rodriquez Vallejo,* 496 F.2d 960, 964 (1st Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974); *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). When the accused seeks to dismiss his retained or appointed counsel and defend himself, the impaneling of the jury has been set by some courts as the outer limit of timeliness, at least in the absence of bad faith. *Chapman v. United States,* 553 F.2d 886, 894 (5th Cir. 1977); see *United States v. Dougherty,* 154 U.S.App.D.C. 76, 87, 473 F.2d 1113, 1124 (1972). Although I see no obvious distinction between replacing original counsel with self-representation and doing so with new counsel, I need not decide whether the same general cutoff point should obtain. In the circumstances of this case—Ms. Roundtree's unexpected withdrawal, approved by the court as trial was about to get under way—an immediate request for an opportunity to secure a replacement would be timely under any general rule. See text accompanying notes 41, 51–55 *infra.*

**28.** *Smith v. United States,* 53 App.D.C. 53, 55, 288 F. 259, 261 (1923); *accord, United States v. Cozzi,* 354 F.2d 637, 639 (7th Cir. 1965), *cert. denied,* 383 U.S. 911, 86 S.Ct. 896, 15 L.Ed.2d 666 (1966) ("[i]t is a right to be exercised at an appropriate stage within the procedural framework of the system of criminal jurisprudence of which it is a part").

**29.** *United States v. Oliver,* 187 U.S.App.D.C. 230, 231, 571 F.2d 664, 665 (1978); *Neufield v. United States,* 73 App.D.C. 174, 182, 118 F.2d 375, 383, *cert. denied,* 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1941) ("[a]n accused aware of his right to counsel and able to obtain counsel himself cannot over an extended time . . . omit to take any steps either towards himself retaining counsel for the trial proper or towards securing an appointment by the court and then—at the moment of commencement of trial—properly complain that unless a continuance is granted in order that he may select counsel he will have been denied the right of choice"); *Smith v. United States, supra* note 28, 53 App.D.C. at 54–55, 288 F. at 260–261 (no abuse of discretion in denying continuance on account of counsel's engagement in another trial where accused and counsel had ample notice that case would be tried on specified date and had received two earlier continuances); *United States v. Rodriquez Vallejo, supra* note 27, 496 F.2d at 961–962 (denial of substitution of counsel on day before trial was to start was not abuse of discretion where accused had plenty of time to substitute earlier and trial court considered request to be in bad faith); *United States v. Brown,* 495 F.2d 593, 600 (1st Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974) (denial of request for third successive counsel on day of trial was not an abuse of discretion where trial court had already granted a two-week continuance for the first substitution of counsel); *Rolon Marxuach v. United States,* 398 F.2d 548, 550–551 (1st Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968) (no violation of "duty to give consideration to a defendant's preference with respect to representation" where unfounded reasons for discontent with remaining counsel indicated lack of good faith and where delay would have impeded "expeditious handling of his case"); *United States ex rel. Martinez v. Thomas,* 526 F.2d 750, 754 n. 6 (2d Cir. 1975) ("[d]efendants['] . . . Sixth Amendment right to counsel of their own choosing . . . may not be manipulated in order to delay or interfere with the orderly processes of justice"); *United States v. Grow,* 394 F.2d 182, 209 (4th Cir.), *cert. denied,* 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968) (accused gave no reason for dissatisfaction on verge of trial and had had eight previous months to consider and make a change); *United States v. Moore,* 569 F.2d 1312, 1313 (5th Cir. 1978) (after continuance to allow accused to retain counsel and warning that no further delay would be tolerated, accused appeared at arraignment without counsel); *United States v. Dilworth,* 524 F.2d 470, 472 (5th Cir. 1975) (lack of specific reasons for dissatisfaction on day before scheduled trial and choice of another attorney who was busy in another trial "strongly suggests that the motion for continuance was merely a pretext for delay"); *United States v. Sexton,* 473 F.2d 512, 514 (5th Cir. 1973) (not an abuse of discretion to conclude that motion was "interposed for delay" where

On the other hand, though the accused has no " 'unbridled right' " to change counsel on the eve of trial,[30] if circumstances have arisen that vitiate the original choice or lead the accused to believe sincerely that his earlier pick is unsatisfactory, a request for leave to choose new counsel must be carefully and seriously considered.[31] "The balancing considerations," one court has put it, "are that the right of counsel cannot be manipulated so as to interfere with the fair administration of justice, but the defendant must have complete confidence in counsel and hence, a change, if it occurs, or even a discharge, will usually point to a continuance." [32]

## B. The Relevance of the Accused's Reasons for Wanting New Counsel

The accused's side of the balance can feature either subjective or objective grounds for a requested continuance. Instances of subjective dissatisfaction with the original choice—a recent loss of confidence in counsel, for example—frequently call upon the court to decide whether the accused seeks the continuance in good faith. In analyzing any given situation for a determination on that score, the court obviously must often inquire into the reasons for the request and for not having acted earlier. Those advanced for the asserted need for substitute or additional counsel might, of course, depend on "facts" that the

accused previously had "ample opportunity to secure counsel of his choice"); *United States v. Carter,* 453 F.2d 402 (6th Cir. 1971) (Sixth Amendment "does not permit [accused] to arbitrarily dismiss his retained attorney on the eve of trial and thus disturb and delay orderly procedures in the courts"); *United States v. Seale,* 461 F.2d 345, 358, 360–361 & n. 9 (7th Cir. 1972) (error to force unwanted counsel on accused absent "unwarranted dilatory tactics" and indication that reasons given were "not genuinely advanced"); *United States v. Hampton,* 457 F.2d 299, 301 (7th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972) (denial of continuance did not infringe constitutional right where accused moved to replace counsel on morning of date set for trial, had not expressed discontent before that time and gave no "justifiable basis" for the requested change); *United States v. Leach,* 429 F.2d 956, 963 (8th Cir. 1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971) (no abuse of discretion where alleged dissatisfaction arose on date of trial and was not hinted at during previous three months or during earlier mistrial); *United States v. Lustig,* 555 F.2d 737, 744 (9th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978) (discretion not abused where continuance denied after trial court had instructed accused to make final arrangements to retain counsel and accused had ample time to do so before trial); *Lofton v. Procunier,* 487 F.2d 434, 435 (9th Cir. 1973) (no abuse of discretion in denying continuance requested on date set for trial; trial judge had warned four weeks earlier while granting a previous continuance for change of counsel that accused must appear on date of trial with one counsel or another); *United States v. Riebold,* 557 F.2d 697, 701–702 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977) (no abuse of discretion where counsel gave four-week warning of impending departure, which accused did not heed by seeking

substitute). See also *Cleveland v. United States,* 116 U.S.App.D.C. 188, 190, 322 F.2d 401, 403, *cert. denied,* 375 U.S. 884, 84 S.Ct. 157, 11 L.Ed.2d 114 (1963) (reasonable to deny new choice of counsel on day of trial where accused had already changed once and there had been several other continuances).

**30.** *United States v. Bragan,* 499 F.2d 1376, 1379 (4th Cir. 1974), quoting *United States v. Grow, supra* note 29, 394 F.2d at 209.

**31.** In *United States v. Johnston,* 318 F.2d 288 (6th Cir. 1963), the accused's original counsel notified him on a Friday that he could not make the trial, which was to start on the following Tuesday, but that his law partner would try the case in his stead. *Id.* at 289. The accused rejected this arrangement, and though he tried unsuccessfully to retain new counsel, the court ordered the trial to start with the partner representing the accused. The Sixth Circuit reversed, holding that the accused had to be afforded a reasonable opportunity to retain substitute counsel and that the period between Friday and Tuesday was too short. *Id.* at 291. See also *United States ex rel. Davis v. McMann,* 386 F.2d 611, 620 (2d Cir. 1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968) (six days through three short continuances was insufficient time within which to retain counsel under the circumstances). Similarly, in a case involving difficult issues and an unpopular client, the Second Circuit held that five days were too few to enable the client to hire new counsel after the discharge of original counsel. *United States v. Mitchell,* 354 F.2d 767, 769 (2d Cir. 1966).

**32.** *United States ex rel. Davis v. McMann,* 252 F.Supp. 539, 545 (N.D.N.Y.1966), *aff'd, supra* note 31.

court recognizes as false or so frivolous as to cast a shadow on the accused's sincerity.[33] But to say that the court may examine the accused's subjective reasons for wanting to replace his existing counsel is not to say that the court may exert control over his selection of particular counsel if qualified.[34] "If the Sixth Amendment right to the effective assistance of counsel means anything, it certainly means that it is the actual choice of the defendant which deserves consideration";[35] resultantly, the

court has no general power to approve or disapprove the accused's reasons for picking to-be-retained counsel.[36] Only when a fair opportunity to engage counsel of choice seemingly has already been provided—the case when new counsel is being sought late in the pretrial period—and when the proposal will entail a substantial imposition on the Government are the accused's motives for wanting a change at all relevant.

This distinction is well illustrated by one of our own decisions. In dealing with an

**33.** See, e. g., *United States v. Shuey,* 541 F.2d 845, 847 (9th Cir. 1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1103, 51 L.Ed.2d 537 (1977).

**34.** Courts do, of course, have a duty "to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773 (1970). See generally Bazelon, *The Realities of* Gideon *and* Argersinger, 64 Geo.L.J. 811, 830–831 (1976). See also *Flynt v. Leis,* 574 F.2d 874 (6th Cir. 1978). They also must consider whether a particular choice of counsel creates a conflict of interest problem. See, e. g., *United States v. Bernstein,* 533 F.2d 775, 788 (2d Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976). See also *In re Investigation Before February 1977 Grand Jury,* 563 F.2d 652 (4th Cir. 1977). And courts need not allow counsel who are disruptive or contumacious to represent an accused if proper steps are taken to protect his interests. *United States v. Dinitz, supra* note 24, 538 F.2d at 1221.

**35.** *United States v. Seale, supra* note 29, 461 F.2d at 358; accord, *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir. 1973), quoting *United States v. Sheiner,* 410 F.2d 337, 342 (2d Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969) ("defendants who retain counsel also have a right of constitutional dimensions to representation by counsel of their own choice"); *United States v. Dinitz, supra* note 24, 538 F.2d at 1219 ("the Sixth Amendment requires the courts to respect a defendant's own particular *choice* of counsel" (emphasis in original)); *cf. SEC v. Csapo,* 174 U.S. App.D.C. 339, 342–343, 533 F.2d 7, 10–11 (1976) (statutory guarantee to assistance of counsel before administrative agency "has been construed to imply the concomitant right to the lawyer of one's choice"). See also *In re Investigation Before April 1975 Grand Jury (Rosen),* 174 U.S.App.D.C. 268, 277, 531 F.2d 600, 609 (1976) (right to counsel of own choice is a "delicate area").

In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court

discussed the right of an accused to proceed *pro se,* but the reasoning of the opinion is quite relevant here. The Court noted that "[t]o thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment." *Id.* at 820, 95 S.Ct. at 2533, 45 L.Ed.2d at 573. And the Court pointedly concluded that "[a]n unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction." *Id.* at 821, 95 S.Ct. at 2534, 45 L.Ed.2d at 573.

**36.** See Maj.Op. at note 16. The California Supreme Court has spoken forcefully on this point:

> Whether or not the court is personally acquainted with the attorney to be associated, or whether or not that attorney enjoys the confidence of the court, are considerations wholly irrelevant to the constitutional issues confronting the trial court. It is the *defendant's* confidence which is at stake, not that of the court.

*Magee v. Superior Court,* 8 Cal.3d 949, 106 Cal.Rptr. 647, 506 P.2d 1023, 1025 (1973) (emphasis in original).

Likewise, the Fifth Circuit recently held that a trial court has no cause to judge the validity of an accused's reasons for a timely request to dismiss counsel and proceed *pro se. Chapman v. United States, supra* note 27, 553 F.2d at 893–89⁼.

Neither my colleagues nor I pass today on the propriety of requiring some adequate reason, as opposed simply to sincere dissatisfaction, in support of a request for new *appointed* counsel. See *Brown v. United States,* 105 U.S. App.D.C. 77, 80, 264 F.2d 363, 366 (*en banc*), *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959). Indeed, the court might have a duty to inquire into the basis for the accused's dissatisfaction. *Id.* at 84, 264 F.2d at 370 (dissenting opinion). See also *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976) (refusal without good cause to proceed with able appointed counsel is waiver of right to counsel); Tague, *An Indigent's Right to the Attorney of His Choice,* 27 Stan.L.Rev. 73 (1974).

effort to replace appointed counsel with retained counsel,[37] "[w]e presume[d] that in ordinary circumstances an accused who finds that funds have become available may, *for reasons sufficient unto him,* conclude that he prefers to have his own paid counsel without necessarily claiming that appointed counsel is inadequate."[38] Since, however, the circumstances were not "ordinary"—in the sense that the request was made just four days before trial was to begin—we held that the substitution could be refused because the accused did not bother to explain either the basis of his dissatisfaction or why he had not utilized his ample prior time to secure retained counsel.[39] In sum, the inquiry into the reasons was indulged only to accommodate the exigencies of ascertaining good faith.

The accused who has had an adequate chance to secure counsel, and who on the very eve of trial seeks a postponement to obtain a substitute or additional counsel, needs a strong showing of sincerity to overcome a natural inference of bad faith.[40] On the other hand, where, as here, the accused effectively loses an attorney shortly before trial due to events beyond his control, the inference of sincerity rings loud and clear.[41] The ground for continuance is wholly objective—the original choice of counsel was frustrated not by a change of the accused's mind but by a change in external circumstances. Because the validity of the ac-

cused's claim that the situation has been altered can be objectively examined, no inquiry into the accused's mental state is normally required or permissible. The accused so situated need establish only that the reason for withdrawal is not a pretext and that the time remaining before trial is insufficient to obtain an adequately-prepared replacement without a continuance.

### C. The Circumstances Here

Reverting to the case at bar, we may first observe that appellant's good faith has not been challenged by the Government—nor hardly could it be. He had retained Ms. Roundtree many months before trial, and from aught that appears her last-minute motion to withdraw came as a sudden surprise. Surely the District Court did not believe that the episode was a planned dilatory tactic, for if the court had it should—and presumably would—merely have denied withdrawal.[42] Appellant had only one business day between the time Ms. Roundtree told him her intentions and the commencement of trial,[43] and his failure to retain replacement counsel during that short interval certainly does not indicate bad faith. In a nutshell, everything points not to an attempt to temporarily sidestep trial but to an endeavor to replace, with reasonable dispatch, counsel whom appellant had long expected to assume a major role at trial.[44]

---

**37.** *McGill v. United States,* 121 U.S.App.D.C. 179, 348 F.2d 791 (1965).

**38.** *Id.* at 183, 348 F.2d at 795 (emphasis supplied).

**39.** *Id.* at 182–183, 348 F.2d at 794–795.

**40.** See cases cited *supra* note 29.

**41.** See notes 51–52, 55 *infra* and accompanying text.

**42.** Compare *United States v. Ruiz,* 533 F.2d 939, 940 (5th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 532, 50 L.Ed.2d 613 (1976) (trial court did not abuse its discretion in refusing both continuance and withdrawal where no effort was made to solve problems during long period before trial). Other options available to a court believing that counsel has inexcusably caused costly delay or is engaged in a contumacious

attempt to defer trial or in an unethical abandonment of his client include the assessment of costs for delay and punishment for criminal contempt. *United States v. Lespier,* 558 F.2d 624, 628 (1st Cir. 1977), citing *In re Sutter,* 543 F.2d 1030 (2d Cir. 1976) and *United States v. Marx,* 553 F.2d 874 (4th Cir. 1977).

**43.** See text *supra* at 3. The court asserts that appellant had five days to replace Ms. Roundtree, but in fact he did not know for certain that she wanted to leave until Thursday night, or that she would be allowed to withdraw until Monday morning—the day trial was to begin.

**44.** Compare *United States v. Rosenberg,* 257 F.2d 760, 764 (3d Cir. 1958), *aff'd on other grounds,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959) (unwarranted delay in reacting to illness of chief trial counsel).

The fact that appellant had selected Mr. Hutter as part of his defense team is irrelevant. He had not selected him as his only counsel. And the fact that appellant still had one attorney remaining after Ms. Roundtree's departure is similarly of no significance.[45] During the initial opportunity to retain counsel of one's choice, the accused may engage two attorneys;[46] indeed, he may hire as many as he can afford, although the trial court may limit the number—but not the choice—of those who actively participate in court. Even if the accused initially retains only one counsel, he is free to add others later so long as he does not thereby substantially inconvenience the trial participants. And if he becomes objectively or subjectively dissatisfied with one important member of his team, his entitlement to a continuance to secure a replacement normally is no different than if the member in question was his only counsel.

Here, it is clear that appellant's earlier retention of counsel of choice was rendered nugatory by an event beyond his control.[47] He "was denied a fair opportunity to choose his own counsel. . . ."[48] Although a continuance might have mildly inconvenienced the court, the prosecution and some

45. Cf. *Illinois v. Pendleton,* 52 Ill.App.3d 241, 9 Ill.Dec. 762, 767, 367 N.E.2d 196, 201 (Ill.App. 1977), *cert. denied,* 435 U.S. 956, 98 S.Ct. 1590, 55 L.Ed.2d 809 (1978).

My colleagues concede that an accused is constitutionally entitled to an initial opportunity to "retain as many [lawyers] as he can afford (subject to the power of the court to limit the number that may participate in court)," Maj.Op. at note 46, and that it was "quite sensible for [appellant] to desire the best lawyer obtainable, even though that lawyer might perform as associate counsel." *Id.* at —— of 189 U.S.App.D.C., at 495 of 584 F.2d. By my analysis, circumstances beyond appellant's control invalidated part of the right to choose his defense team and thus the trial court had no discretion to prevent appellant from regaining it. Consequently, in assessing whether a constitutional violation has occurred, it makes no difference whether Ms. Roundtree was intended to serve as lead counsel. That would be significant only in determining whether the violation was harmless. See text *infra* at note 110.

In any event, I think the record on this matter—which is critical in the court's analysis—is much less clear than a reading of the majority opinion might indicate. Appellant states in his brief that Ms. Roundtree was in fact to be lead counsel. *E. g.,* Brief for Appellant at 1, 3, 8, 10, 15, 16, 17. The Government's brief, which is signed by the trial prosecutor, never denies that. Indeed, the Government confirms that "Mrs. Roundtree said . . . that she could not take a passive role as associate counsel in the case," Brief for Appellee at 3; accord, *id.* at 12, and that "Mr. Hutter told the court that appellant wanted a black attorney *to try the case.*" *Id.* at 5 (emphasis supplied); accord, *id.* at 4. It is quite natural for a layman to say, as appellant did, that the chronologically-second lawyer he retained was hired to assist the initial lawyer, even though the second was to be the trial lawyer. Furthermore, Ms. Roundtree's statement that "I do not think I would be . . fair to Dr. Burton to be associate counsel,"

J.App. 27, was spurred not by a disinclination to continue as associate counsel after she and her client had disagreed on the defense to be presented, but by her belief that she could not be lead trial counsel for that very reason and her refusal to take a less active role than planned. As she said, "I couldn't be associate counsel, *and just sit at the table. That is not my role as a lawyer."* *Id.* (emphasis supplied).

Though irrelevant to my analysis, the proposition that Ms. Roundtree was not to be lead counsel—or even an equal partner in the defense—but rather a mere assistant to Mr. Hutter is central to the court's disposition. See Maj.Op. at note 22. The court is able to reach its decision to affirm only by concluding that Ms. Roundtree was to act in a subservient capacity. The record undisputably leaves room for doubt on that score, and I would not share any reluctance at least to remand for an accurate determination of that fact if I felt it crucial to the outcome. And because the court operates on cryptical indications in the trial record, I see no reason why our ruling today would be dispositive of a new-trial motion seeking to establish beyond peradventure that Ms. Roundtree's trial role was to equal or exceed that of Mr. Hutter.

46. Maj.Op. at note 46; *State v. Waterhouse,* 3 Conn.Cir. 102, 208 A.2d 354, 356 (1964).

47. See *Gandy v. Alabama,* 569 F.2d 1318, 1326 (5th Cir. 1978) ("[t]he trial court abused his discretion . . . when he refused either to grant the motion for a reasonable continuance in order that the Petitioner have the assistance at trial of counsel whom he had chosen and retained or in some other matter assure the continued attendance of Petitioner's retained counsel, who announced an intention to abandon Petitioner and later did so").

48. Maj.Op. at note 49.

of the witnesses,[49] that consequence was hardly appellant's fault. The motion for leave to withdraw was not forthcoming until the trial date was virtually at hand, and the court granted it, effectively negating appellant's opportunity to satisfy an understandable desire for comfort and confidence in his trial representation.

More than two decades ago we articulated the legal principle that governs this case. In *Lee v. United States*,[50] the accused's third retained lawyer appeared before the trial judge on the trial date and disclosed a possible conflict of interest stemming from earlier representation of the chief prosecution witness. The trial judge granted his motion to withdraw and, over objection, appointed as the accused's counsel an attorney in the courtroom whom the accused had discharged earlier. We enforced the accused's right to select his own counsel and, of even greater significance, observed:

> [A]ppellant bore no responsibility for being without counsel on the eve of his trial. He had appeared for trial with counsel of his own choosing, and the record does not show that he had anything to do with that counsel's withdrawal by leave of court. However that withdrawal may have obstructed the processes of court, such obstruction is clearly not chargeable to the appellant and cannot be made the occasion for denying him his constitutional right to counsel of his own choosing.[51]

Furthermore, we indicated that in circumstances objectively invalidating the initial choice of counsel—as when the accused seeks to replace a withdrawing retained attorney—the court cannot force unwanted counsel upon him, however ill-founded his objections to that counsel may be.[52] With subjective sincerity not at issue, the reasons for the particular choice of replacement counsel were of no concern.

We recently reaffirmed the objective-grounds rule set down in *Lee*. Sitting *en banc* in *United States v. Mardian*,[53] we held that the trial court had erred in requiring the accused to proceed with only one of his counsel after his lead counsel became ill two weeks into the trial.[54] We pointed to the client's lack of contribution to the loss of his lawyer—the loss, we found, was "*bona fide* and unforeseeable"[55]—and although co-counsel was certainly skilled, we recognized that the right to choose one's counsel was critical in a difficult conspiracy case featuring disparately condemnatory evidence against several codefendants.[56] We placed considerable reliance on the Government's decision not to resist a continuance,[57] attributing importance to this because it indicated that no "undue disruption" of the criminal justice system would ensue from a grant of the motion.[58]

Although *Mardian* does indicate a wholesome concern for the orderly administration of justice,[59] that concern is controlling only when the accused's reasons for seeking new counsel are purely subjective—that is, when the accused is merely unhappy with how he utilized his initial opportunity to choose counsel and not when that opportunity has been debased by subsequent events. As I read *Lee* and *Mardian* together, they teach that the District Court should have exercised its discretion in favor of appellant's good faith effort to reacquire a defense team of his own choice.[60]

---

49. Compare text *infra* at notes 61–62.

50. 98 U.S.App.D.C. 272, 235 F.2d 219 (1956).

51. *Id.* at 274, 235 F.2d at 221.

52. *Id.*

53. 178 U.S.App.D.C. 207, 546 F.2d 973 (*en banc* 1976).

54. *Id.* at 213, 546 F.2d at 979.

55. *Id.* at 214, 546 F.2d at 980 (footnote omitted).

56. *Id.*

57. *Id.*

58. *Id.*

59. *Id.*

60. See also *Releford v. United States, supra* note 27, 288 F.2d at 300–301 (trial court erred in requiring lawyer who appeared to request a continuance for accused's ill counsel to try case over his and accused's objection); *English v.*

### D. The Absence of Any Proper Reasons for Denying Appellant's Request

The foregoing analysis establishes both the limited number of justifications for denying a requested continuance in these circumstances and the rigorous scrutiny to which such a denial must be subjected. Even if inconvenience to trial participants could ever outweigh appellant's objectively-grounded assertion that his earlier Sixth Amendment choice of counsel had become ineffectual, I am not persuaded that the Government made a sufficient showing. The record does not indicate that any of the Government's witnesses were from afar, nor does it specify any inconvenience to those in the vicinity, many of whom were local police officers or informants.[61] The main argument advanced by the Government against any sort of continuance was that the prosecutor himself had spent many days preparing for trial. I note, however, that the prosecutor did not indicate any conflict in his schedule that would have precluded trial within a reasonable time of its original date, and I am unable to see why his preparation would not have served him almost if not fully as well at a trial in May as at one in April.[62] Even in dealing with run-of-the-mill motions for continuance, the trial court's discretion—though indubitably broad—is not unlimited, and at the very least some plausible reason for refusing an honest and meritorious request must appear.[63]

Moreover, even if my colleagues were correct that a denial of the continuance sought by appellant could have been supported on the basis of inconvenience, the District Court gave no indication that it "perceived the salient factors and evaluated them. . . ."[64] Though the court "was in a good position to judge the inconvenience to the litigants, the witnesses, counsel, and the court,"[65] the simple fact is that it never used that approach to make such a judgment. On the contrary, the District Court predicated its disposition on its disapproval of what it deemed to be a singular desire on appellant's part to engage a black trial attorney as one of his counsel.[66] It seems worth mentioning that appellant was at least as much concerned about Ms. Roundtree's experience as her color, a matter to which the court did not speak.[67] More importantly, however, as I have explained, the reasons for a litigant's choice of counsel are a personal matter, and become relevant to a judicial ruling only so far as they might indicate bad faith or insincerity of subjective grounds for the request.[68] The trial court gave not so much as a hint that appellant's reasons suggested that; instead, it articulated only its opinion that appellant's bid for a black lawyer was simply improper.[69] That ground for denial lay beyond the domain of trial-court discretion, and a decision bottomed on it is unsustainable. And by relying upon a totality-of-the-

---

*State,* 8 Md.App. 330, 259 A.2d 822, 826 (1969) (denial of continuance was abuse of discretion where accused did not expect his retained counsel to send his son to try the case).

**61.** Compare *United States v. Brown, supra* note 29, 495 F.2d at 600 (out-of-state witnesses already summoned) and *United States v. Terry,* 449 F.2d 727, 728 (5th Cir. 1971) (same) with *Giacalone v. Lucas, supra* note 25, 445 F.2d at 1252 (dissenting opinion) (because all involved witnesses were policemen, there could be little inconvenience in a delay of the trial).

**62.** As it was, more than two and one-half years had elapsed since the time of the alleged criminal acts. See *United States v. Mitchell, supra* note 31, 354 F.2d at 769 (Government cannot argue speed where nine months had already passed since alleged crime occurred).

**63.** See text at notes 23–26 *supra; cf. United States v. Roberts,* 187 U.S.App.D.C. 90, 103, 570 F.2d 999, 1012 (1977) (refusal to allow withdrawal of guilty plea was abuse of discretion where inconvenience to Government was minimal and objective indicators supported accused's justification for request).

**64.** Maj.Op. at —— of 189 U.S.App.D.C., at 497 of 584 F.2d.

**65.** Maj.Op. at —— of 189 U.S.App.D.C., at 499 of 584 F.2d.

**66.** See text at note 16 *supra.*

**67.** See text at notes 5, 11, 12 *supra.*

**68.** See text at notes 33–41 *supra.*

**69.** See text at note 16 *supra.*

circumstances standard never employed by the trial court, the majority is exercising its own discretion, not affirming that of the District Court.

One further consideration merits brief discussion. Even if it had been the District Court's function to judge any more than the sincerity of appellant's reasons, the court would still have erred.. The majority apparently agrees that a feeling that black counsel might do better than white counsel with black witnesses and jurors is no more improper than one that ofttimes prompts a litigant to retain a handsome lawyer, a glib lawyer or a famous lawyer.[70] That jurors should not be swayed by the color of lawyers and others appearing before them is a proposition with which all would agree, but it does not mean that an accused who believes that juries sometimes do such things must surrender the prerogative of taking that opinion into account.[71] The District Court perhaps felt that a grant of appellant's request would have brought about some sort of equal protection violation. Such a position I would not share, for I am unable to see whose rights could thereby have been denied.

I would find, then, that the District Court denied appellant's motion for continuance in the erroneous view that the reason behind it was unworthy.[72] Beyond that, I would conclude that had it fully exercised its discretion on the record then before it, the request could not have justifiably been refused. I accordingly would hold that the court infringed appellant's Sixth Amendment right to a renewed opportunity to retain counsel, but that does not end my task. It is still necessary to determine whether appellant waived his right and, if he did *not*, whether its deprivation was harmless error.

## III. WAIVER

The court does not reach this issue, but it hints that appellant "was less than forceful in asserting his . . . right. . . ."[73] I must object to any implication that appellant waived his right. As a commonsense matter, appellant's decision to "abide by" the District Court's ruling[74] seems not to be in the nature of a waiver of his right to counsel of choice. Rather, it appears quite plainly that he was acting simply out of courtesy and respect for the court; he had made his argument for the continuance and lost, and it was time to sit down and accept whatever outcome the court decreed.[75] We should not encourage litigants to act contumaciously out of fear that otherwise their constitutional rights will evaporate,[76] nor should we penalize them for dignified rather than vociferous protests of what they consider to be unwarranted treatment.

---

**70.** See Maj.Op. at —— of 189 U.S.App.D.C., at 497 of 584 F.2d.

**71.** In holding that a prosecutor may peremptorily strike blacks from a petit jury, the Supreme Court has reasoned that "the peremptory permits rejection for a real or imagined partiality that is less easily designed or demonstrable. . . . It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty." *Swain v. Alabama,* 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759, 772–773 (1965) (footnote omitted).

**72.** See text *supra* at note 69; *cf. Castaneda-Delgado v. INS,* 525 F.2d 1295, 1300 (7th Cir. 1975) (denial of continuance to look for another counsel for civil deportation hearing is abuse of discretion in absence of reasons for denial).

**73.** Maj.Op. at note 37.

**74.** See text *supra* at note 18.

**75.** In *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), a unanimous Court did not even hint at waiver in counsel's statement that "we will obey" the trial court's order prohibiting counsel and client from speaking during an overnight recess. *Id.* at 85 n. 1, 96 S.Ct. at 1334, n. 1, 47 L.Ed.2d at 597, n. 1. Although counsel had objected, he "appropriately indicated that he would—as in fact he did—comply with the court's order." *Id.* at 83, 96 S.Ct. at 1333, 47 L.Ed.2d at 596 (footnote omitted).

**76.** Compare *United States v. Seale, supra* note 29, 461 F.2d at 350 (accused's violent complaints of denial of rights to counsel of choice and to defend *pro se* resulted in court ordering him bound and gagged).

Nor, as a legal matter, does appellant's statement to the court rise to the level of a voluntary, knowledgeable and unambiguous waiver of a right secured by the Constitution. The stringent standard incorporating those elements, laid down by the Supreme Court in *Johnson v. Zerbst*,[77] retains its vitality forty years later—at least for waivers of constitutional rights at criminal trials.[78] And as the Court has stated in somewhat similar circumstances—involving an accused, a lawyer, who after initial objection remained silent as the court ordered one of his counsel to represent a codefendant as well—"we indulge every reasonable presumption against the waiver of fundamental rights."[79] Here, as in that case, "the manner in which the parties accepted the [court's ruling] indicates that they thought they were acceding to the wishes of the court";[80] here, as there, to read a waiver into appellant's muted response is to "do violence to reality,"[81] and that I decline to do.

## IV. HARMLESS ERROR

The final question, and—though my colleagues deem the answer foreclosed[82]—by far the most difficult one for me, is whether the denial of appellant's right to replacement counsel of his choice was reversible error. It is now settled, of course, that some mistakes of constitutional magnitude can be labeled harmless,[83] but the standard for determinations on that score is not nearly so clear.[84] This imprecision is understandable, and perhaps it is wise. Any simply-stated rule might not encompass or assign true value to all concerns that should guide such decisions. Any hard-and-fast rule might spawn anomalous or even arbitrary results in some cases.

### A. General Principles

The justification for harmless-error rules is singleminded: they avoid wasting the time and effort of judges, counsel and other trial participants.[85] Other considerations enter into the picture, however, when we set out to ascertain what is harmless and what is not. Wisdom of the ages counsels against appellate erosion of the stature and function of the trial jury.[86] Societal beliefs about who should bear the risk of error in particular types of proceedings deserve weight in decisions on harmlessness.[87] Respect for dignity of the individual, as well as for the law and the courts that administer it, may call for rectification of errors not visibly affecting the accuracy of the

**77.** 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1467 (1938).

**78.** *Schneckloth v. Bustamonte,* 412 U.S. 218, 237, 93 S.Ct. 2041, 2052–2053, 36 L.Ed.2d 854, 868–869 (1973). And we must, of course, apply the same standard even though appellant allegedly waived only one aspect of his constitutional right to counsel. *Maynard v. Meachum, supra* note 36, 545 F.2d at 277.

**79.** *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680, 699 (1942); accord, *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, 440 (1977).

**80.** *Glasser v. United States, supra* note 79, 315 U.S. at 71, 62 S.Ct. at 465, 86 L.Ed. at 700. In another case involving a trial court's refusal to grant adequate time to replace counsel, the Second Circuit found no waiver in a statement in effect indicating, "[y]es, because you compel me to do so." *United States v. Mitchell, supra* note 31, 354 F.2d at 768.

**81.** *Glasser v. United States, supra* note 79, 315 U.S. at 72, 62 S.Ct. at 465, 86 L.Ed. at 700.

**82.** See note 103 *infra.*

**83.** *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705, 710 (1967).

**84.** Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale,* 125 U.Pa.L.Rev. 15, 32 (1976); Saltzburg, *The Harm of Harmless Error,* 59 Va.L. Rev. 988 (1973) ("[c]haos surrounds the standard for appellate review of errors in criminal proceedings").

**85.** Comment, *Principles for Application of the Harmless Error Standard,* 41 U.Chi.L.Rev. 616, 626 (1974).

**86.** *United States v. James,* 181 U.S.App.D.C. 55, 64, 555 F.2d 992, 1001 (1977); see Field, *supra* note 84, at 33.

**87.** Saltzburg, *supra* note 84, at 994.

judicial process.[88] And the prophylactic effect of a reversal occasionally might outweigh the expenditure of effort on a new trial.[89]

My point of departure is the nature of the error I see here: a constitutional breach in a criminal case. The heavier burden of proof—beyond a reasonable doubt—constitutionally imposed upon the Government in a criminal case [90] reflects our societal philosophy that malfunctions of the criminal justice process ordinarily should affect the state and not the individual.[91] By the same token, the standard for measuring harmlessness should be much higher when guilt or innocence of crime is at stake.[92] And when judicial error is of a constitutional character, the test becomes yet more stringent,[93] precisely because conformity with constitutional guarantees is often critical to assuring a fair and accurate determination on culpability.[94]

The interaction of all these factors is reflected in the rule laid down by the Supreme Court over a decade ago in *Chapman v. California*,[95] which places on the Government the onus of demonstrating that constitutional error at a criminal trial is harmless beyond a reasonable doubt.[96] If the infirmity is in the admission or rejection of evidence, it is—in theory at least—possible for an appellate court to consider the case on the evidence that should properly have been let in, just as though the mistake had never occurred.[97] Thus, if that evidence is so convincing that the court cannot find even a reasonable possibility that a jury would reach a different result another time around, the court will seldom reverse,[98]

---

**88.** *Cf.* discussion accompanying notes 118–124 *infra.*

**89.** See *United States v. Freeman*, 169 U.S.App. D.C. 73, 80 & n. 45, 514 F.2d 1314, 1321 & n. 45 (1975); Comment, *supra* note 85, at 626 (automatic reversal is a more effective deterrent of erroneous trial activity than exclusionary rule is of improper police action because burden of reversal falls more directly on responsible party).

**90.** *E. g., In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). While the Court in *Winship* spoke of the Fourteenth Amendment vis-a-vis state prosecutions, the same safeguard is afforded by the Fifth Amendment in relation to federal prosecutions. *E. g., Cool v. United States,* 409 U.S. 100, 104, 93 S.Ct. 354, 357, 34 L.Ed.2d 335, 339 (1972).

**91.** Underwood, *The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases,* 86 Yale L.J. 1299, 1306 (1977) (reasonable doubt rule reduces chances of erroneous conviction and symbolizes great significance society places on criminal conviction); *cf. Speiser v. Randall,* 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1341–1342, 2 L.Ed.2d 1460, 1472–1473 (1958) (margin of error is reduced for party with "interest of transcending value").

Part of the rationale for the reasonable-doubt rule is that because the scales of justice are imperfect and a flaw therein might prejudice the individual, the balance must be weighted heavily on his side to minimize erroneous con-

victions. Underwood, *supra.* When a breakdown is not only possible but, as here, is established, the "fudge factor" in favor of the individual should be at least as great. Perhaps it should be even greater since one level of uncertainty has been removed. We know an error has occurred, and only the chances that the flaw prejudiced the individual remain problematical.

**92.** Saltzburg, *supra* note 84, at 989; see *Kotteakos v. United States,* 328 U.S. 750, 762–763, 66 S.Ct. 1239, 1246–1247, 90 L.Ed. 1557, 1565–1566 (1946).

**93.** See *Kotteakos v. United States, supra* note 92, 328 U.S. at 775, 66 S.Ct. at 1253, 90 L.Ed. at 1572.

**94.** *Cf. Doe v. Hampton,* 184 U.S.App.D.C. 373, 394–395, 566 F.2d 265, 286–287 (1977) (dissenting opinion).

**95.** *Supra* note 83.

**96.** 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710.

**97.** Erroneously-admitted evidence might, however, lead to a corresponding adjustment of defense strategy, thus misshaping the remaining evidence. See *Fahy v. Connecticut,* 375 U.S. 85, 91, 84 S.Ct. 229, 232–233, 11 L.Ed.2d 171, 175–176 (1963).

**98.** *E. g., Schneble v. Florida,* 405 U.S. 427, 430–432, 92 S.Ct. 1056, 1058–1060, 31 L.Ed.2d 340, 344–345 (1972); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284, 287–288 (1969).

though this traditional approach is not without its critics.[99] On the other hand, if the error is procedural in nature, even strong evidence of guilt can be an unreliable indicator of harmlessness simply because the evidence presented might not have been the same absent the infirmity.[100] Some procedural errors will have such obvious ramifications in the case presented to the trier of fact that we can adjust accordingly our consideration of the remaining evidence, but often the impact will be "incapable of any sort of measurement." [101]

With procedural errors, then, we can count on an overwhelming-evidence test only in limited circumstances where we are able to say without a reasonable doubt whatsoever that the error did not subtly and substantially corrode the ultimate state of the argument, and evidence presented to the initial decisionmaker. To be sure, some rights are so peripheral to fairness of the trial, and some trespasses on fundamental interests so minor in nature, that one can perceive clearly that the result of the process was not critically altered. But, as the Supreme Court has declared, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." [102] Many aspects of the right to counsel may reach this magnitude [103]—its infringement can taint

99. Field, *supra* note 84, at 33 (overwhelming-evidence standard usurps the jury's function, implies that innocent alone have constitutional rights, and places difficult burdens on appellate courts). See also *Fahy v. Connecticut, supra* note 97, 375 U.S. at 86–87, 84 S.Ct. at 230, 11 L.Ed.2d at 173–174. We ourselves have admitted that "[a]ssessing prejudice is an elusive task, requiring appellate judges to weigh the impact of trial defects on the minds of other people," *United States v. Freeman, supra* note 89, 169 U.S.App.D.C. at 79–80, 514 F.2d at 1320–1321, and accordingly have looked to the nature of the improper evidence rather than to the quantity of the untainted evidence. *United States v. James, supra* note 86, 181 U.S.App. D.C. at 64 & n. 55, 555 F.2d at 1001 & n. 55.

100. See *Holloway v. Arkansas,* 435 U.S. 475, 490–491, 98 S.Ct. 1173, 1181–1182, 55 L.Ed.2d 426, 437–438 (1978).

101. *United States v. Hurt,* 177 U.S.App.D.C. 15, 21, 543 F.2d 162, 168 (1976). Here, for instance, appellant contends that Mr. Hutter made two errors to which more experienced counsel might not have fallen victim. The first and more important involved testimony by a Government witness to the effect that appellant had prescribed ritalin pills for her brother and that he had jumped from a three-story building while under the influence of the pills, perhaps leaving the jury with the impression that he had died. Although the court ultimately instructed the jury to disregard this testimony, appellant now argues that he might have been prejudiced by Mr. Hutter's failure to prevent the testimony from getting before the jury at all. The other instance of alleged deficiency was Mr. Hutter's attempt to ask a hypothetical question for which no supporting facts had been or were expected to be testified to. Appellant now argues that the question and its overruling might have undermined the credibility of his case in the eyes of the jurors.

If I were sure that the possibility of prejudice to appellant was confined to these two instances, I would not deem them of such character as to raise a reasonable doubt that the constitutional denial was not harmless. There is no such assurance, however.

102. *Chapman v. California, supra* note 83, 386 U.S. at 23, 87 S.Ct. at 827–828, 17 L.Ed.2d at 710, citing *Gideon v. Wainwright, supra* note 21 (footnotes omitted) (giving right to counsel as one example); 386 U.S. at 43–44, 87 S.Ct. at 837–838, 17 L.Ed.2d at 721–722 (Stewart, J., concurring) ("constitutional rights are not fungible goods"); see Comment, *supra* note 85, at 620–626 (proposing test for automatic reversal based, *inter alia,* on fundamentality of the right in question and its explicitness in the Constitution).

103. See *Lakeside v. Oregon,* 435 U.S. 333, 341, 98 S.Ct. 1091, 1096, 55 L.Ed.2d 319, 326 (1978) ("[i]n an adversary system of criminal justice, there is no right more essential than the right to the assistance of counsel"). The Supreme Court has indicated that a Sixth Amendment violation cannot be harmless. See note 102 *supra* and accompanying text. In light of other Supreme Court opinions, however, that holding has been construed as referable only to a relatively major infringement, such as a complete denial of counsel at trial. *United States v. Crowley,* 529 F.2d 1066, 1070 (3d Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976); see *Milton v. Wainwright,* 407 U.S. 371, 377–378, 92 S.Ct. 2174, 2178, 33 L.Ed.2d 1, 6–7 (1972) (alleged Fifth and Sixth Amendment infractions not reached because error, if any, was harmless); *Chambers v. Maroney,* 399 U.S. 42, 53–54, 90 S.Ct. 1975, 1982–1983, 26 L.Ed.2d 419, 429–430 (1970) (Court is "not disposed to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel"); *Coleman v. Alabama,* 399

the trial to its roots,[104] for a court might be unable to safely excise particular items that particular counsel might have kept out of the evidence, or to identify those that he might have gotten in.[105]

## B. *The Probability of Prejudice in This Case*

Appellant's right to counsel of his choice was violated when he was denied the opportunity to secure new counsel to replace Ms. Roundtree. Since, however, Mr. Hutter represented him throughout the trial, obviously the violation did not negate all of the Sixth Amendment protection to which he was entitled. Nonetheless, I have reasonable—indeed, substantial—doubts that it did not materially affect the evidence and argument presented on his behalf to the jury. Mr. Hutter performed competently, but the right to effective assistance of counsel is not the concern here. Appellant's Sixth Amendment right was to retain not merely adequate counsel but one or more exceptional counsel if he could.[106] Mr. Hutter is experienced, but appellant wanted counsel who, like Ms. Roundtree, was more experienced and additionally was black—in a word, counsel in whom appellant could repose complete confidence.[107] To say that Mr. Hutter did well is not to say that had appellant gotten his full constitutional due

U.S. 1, 11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387, 398 (1970) (remand to determine whether denial of right to counsel at preliminary hearing was harmless error); *United States v. Wade,* 388 U.S. 218, 242, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1166 (1967) (remand to ascertain impact of lack of counsel at lineup).

Accordingly, courts have labeled some "minor" violations of the right to counsel harmless. *E. g., in re Di Bella,* 518 F.2d 955, 959 (2d Cir. 1975) (exclusion of counsel from reading of grand jury minutes at contempt proceeding harmless where client allowed to repeat substance to counsel and exact phraseology was not possibly important); *United States v. Crowley, supra,* 529 F.2d at 1069 (denial of counsel at hearing on motion to withdraw guilty plea harmless under circumstances). Thus, unlike the majority, I am not satisfied that, at least as yet, it can safely be assumed *that each and every right-to-counsel violation is* inherently prejudicial. But see Maj.Op. at note 19.

It is probably true that few such infringements can fairly be deemed noninjurious—as my analysis of this very case seems to demonstrate—but that is no reason to apply a per se rule of prejudice to cases in which harmlessness can be established. If our experience should someday teach us that we can never eliminate all reasonable possibility of prejudice in these circumstances, that would be the time to impose a per se rule. The desire to accommodate those possible situations where one can say with absolute certainty that no harm was suffered within the court's unnecessarily absolute position on harmlessness causes it to incorporate a showing of prejudice as one factor in its totality-of-the-circumstances test. See Maj.Op. text at note 19. Though prejudice might be an element of a showing that the denial of a continuance violated *due process,* prejudice has never before been considered an element of a *Sixth Amendment* violation. See note 120 *infra.*

**104.** *Castaneda-Delgado v. INS, supra* note 72, 525 F.2d at 1300–1302.

**105.** Compare *Holloway v. Arkansas, supra* note 100, 435 U.S. at 490, 98 S.Ct. at 1182, 55 L.Ed.2d at 438 (failure of trial court to relieve appointed counsel of conflict of interest in representation of codefendants cannot be harmless because no way to know what counsel might have consciously or subconsciously refrained from doing); *Hamilton v. Alabama,* 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114, 117 (1961) (Court will not investigate harmlessness of denial of right to counsel at plea to capital offense because "the degree of prejudice can never be known").

**106.** That is, the right to effective assistance of counsel is distinct from the right to counsel of choice. The fact that one was not infringed says nothing about the condition of the other. *Gandy v. Alabama, supra* note 47, 569 F.2d at 1326. Contra *United States v. Gray,* 565 F.2d 881, 887 (5th Cir. 1978). Although the majority purports to agree, Maj. Op. at note 10, it later emphasizes "that Hutter's representation of appellant far exceeded the standard of assistance that is constitutionally required." Maj.Op. at —— of 189 U.S.App.D.C., at 498 of 584 F.2d.

**107.** See *Lee v. United States, supra* note 50, 98 U.S.App.D.C. at 274, n.5, 235 F.2d at 221 n.5, quoting *In re Mandell,* 69 F.2d 830, 831 (2d Cir. 1934) ("[t]he relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously"). In *Mandell,* the Second Circuit held that even in a civil case where a trustee in bankruptcy has petitioned for appointment of counsel, denial of the trustee's choice would be an abuse of discretion in all but the rarest cases.

the defense might not have been markedly better.

Many of the raw facts of the case were not in serious dispute, but the interpretation of the facts definitely was. Appellant's office admittedly was a madhouse at times; the Government's evidence certainly indicated that appellant had many more patients than any one physician should attempt to handle, and that many of them received what charitably can be called less than thorough care.[108] The crucial question was whether this sad state of affairs was attributable to a well-intentioned endeavor to provide medical service to a needy community,[109] to malpractice remediable only in a civil suit or by the medical society or instead to a criminal scheme to peddle prescriptions for controlled drugs. Who can say with real assurance that another lawyer[110]—more experienced in the courtroom and more familiar with life in the ghetto— would not have been able to impeach prosecution witnesses' interpretations of what

they saw, to elicit a more favorable gloss on the facts from appellant's own witnesses, or to convince the jury in final argument that the Government's conclusion on the facts was not the only reasonable explanation?[111]

On this we are not permitted nor am I willing to speculate, particularly in the context of a criminal appeal where the Government's burden is to establish harmlessness beyond a reasonable doubt.[112] The decision in this regard, rather, must be guided by *Glasser v. United States*,[113] in which the trial court, over objection, had assigned one of Glasser's two counsel[114] to simultaneously represent a codefendant after one of the codefendant's counsel had become unable to participate and the codefendant had become dissatisfied with his other counsel.[115] Finding that this was error, the Supreme Court noted that a possible conflict of interest and the burden of representing two clients might have impaired the assigned counsel's effectiveness in defending Glasser.[116] But critically for present purposes, the Court

---

**108.** Tr. 896. The Government's evidence showed that appellant wrote 2,300 prescriptions for preludin and ritalin during a four-month period. Tr. 561. A crowd often formed outside the office. Tr. 189–190. The Government called three physicians as expert witnesses on the standards of the medical profession.

**109.** See, *e. g.,* Tr. 895–897 (testimony that appellant attempted to keep patients from coming back too frequently); *id.* at 898 (appellant sought aid from police in controlling conditions at office); *id.* at 985–986 (appellant once refused to write prescriptions for armed and threatening man); *id.* at 1008 (appellant was upset by chaos in his office but did not want to stop helping people).

**110.** The court concedes that Ms. Roundtree was to take at least an active role in the presentation of appellant's defense. Maj.Op. at —— of 189 U.S.App.D.C., at 497 of 584 F.2d.

**111.** The court agrees that Ms. Roundtree might have helped. Maj.Op. at —— of 189 U.S.App. D.C., at 498 of 584 F.2d.

In *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the Court held that elimination of final argument in bench trials was a denial "of the basic right of the accused to make his defense." *Id.* at 859, 95 S.Ct. at 2554, 45 L.Ed.2d at 598. The Court dismissed the contention that the accused had failed to show prejudice, pointing out that "[t]here is no way to know whether . . .

any . . . appropriate arguments in summation might have affected the ultimate judgment in this case." *Id.* at 864, 95 S.Ct. at 2556, 45 L.Ed.2d at 602. See also *Smith v. Illinois,* 390 U.S. 129, 132–133, 88 S.Ct. 748, 750–751, 19 L.Ed.2d 956, 959–960 (1968), quoting *Alford v. United States,* 282 U.S. 687, 692–694, 51 S.Ct. 218, 219–220, 75 L.Ed. 624, 628–629 (1931) (denial of right to cross-examine witness on name and place of residence is reversible error even if it would not "necessarily have brought out facts tending to discredit the testimony in chief"); *Clancy v. United States,* 365 U.S. 312, 316, 81 S.Ct. 645, 648, 5 L.Ed.2d 574, 577 (1961) (Court will not "speculate whether [statements withheld by the Government] could have been utilized effectively" for impeachment).

**112.** See note 92 *supra.*

**113.** *Supra* note 79.

**114.** The counsel thus appointed was ultimately the most active defense counsel, although it is unclear whether Glasser originally intended him to be lead counsel. 315 U.S. at 69, 62 S.Ct. at 464, 86 L.Ed. at 698–699.

**115.** *Id.* at 68–70, 62 S.Ct. at 464–465, 86 L.Ed. at 698–699.

**116.** *Id.* at 73–75, 62 S.Ct. at 466–467, 86 L.Ed. at 700–701.

did not search for specific instances of prejudice before reversing the conviction:

> To determine the precise degree of prejudice sustained by Glasser as a result of the court's [action] is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.[117]

Because I believe that the right to a reasonable opportunity to replace one counsel on a two-attorney defense team is as fundamental as the right to have both members of such a team devote their full energies to their client, I too would decline "to indulge in nice calculations" of prejudice.

I am supported in this course by the very nature of the constitutional deprivation confronting us here. To treat the error as harmless on the ground that one cannot perceive grave fault in Mr. Hutter's performance[118] would be to undermine the right to retain counsel of choice.[119] It would make no sense to hold that a trial court may not say that because attorney X is competent the accused has no right to retain attorney Y, and then to turn right around and say that such an error is harmless because attorney X really was competent. Surely trial judges are not likely to force unqualified counsel upon an accused, and if proficiency were the lone predicate of harmlessness the constitutional guarantee of freedom to select one's paid counsel would be an empty exhortation.[120] Implicit in the right is that neither trial nor appellate courts may dishonor it simply because the accused already has a lawyer who is capable. In short, the right should not be gutted simply because violations of it seem "generically harmless."[121]

The logic of this conclusion is exemplified by a Fourth Circuit decision in which the statutory right to have two appointed counsel in federal capital cases[122] had been denied. The court recognized "the almost insuperable difficulty which would be placed on any defendant, if the burden is placed on him, to show *post hoc* that he was prejudiced by denial of his right to two attorneys."[123] Because the court believed that

117. *Id.* at 75–76, 62 S.Ct. at 467–468, 86 L.Ed. at 701–702.

118. Some courts have indicated that denial of the right freely to choose one's counsel is harmless if counsel forced upon the accused performs competently. *Williams v. United States,* 332 F.2d 36, 39 (7th Cir. 1964), *cert. denied,* 379 U.S. 976, 85 S.Ct. 672, 13 L.Ed.2d 566 (1965); see *United States v. Lustig, supra* note 29, 555 F.2d at 744–745. But see *United States v. Johnston, supra* note 31, 318 F.2d at 290 (reversal although imposed counsel "extremely competent"). In *Lustig,* the court had already held that the accused had been afforded ample time to make a final choice of counsel, especially since he was warned a month before trial to do so. 555 F.2d at 743–744. The court in *Williams* felt that the "real issue" was whether the accused received competent representation, 332 F.2d at 39, and as I have elucidated I respectfully disagree. See Part II and note 106 *supra.* That disagreement is also obvious in this court's *en banc* opinion in *United States v. Mardian, supra* note 53, in which we reversed a failure to allow an accused's choice of substitute counsel even though the attorney who ultimately completed the trial was certainly not inadequate. 178 U.S.App.D.C. at 214, 546 F.2d at 980.

119. *United States v. Bragan, supra* note 30, 499 F.2d at 1381 (dissenting opinion) ("effective-

ness of substitute counsel is not a relevant consideration when he is not counsel of choice"). In addition, the judicial economies realized by prophylactic rules, such as that laid down by the Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), might be undercut by the necessity of finely weighing prejudice in each case. Comment, *supra* note 85, at 628.

120. Field, *supra* note 84, at 20; accord, *United States v. Dougherty, supra* note 27, 154 U.S. App.D.C. at 111, 473 F.2d at 1148 (on petition for rehearing). I deal here only with the matter of harmlessness of a separately-ascertained Sixth Amendment violation, and not with prejudice as an element of a due process violation, see *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), or as a prerequisite to federal collateral relief from a state conviction, see *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

121. Field, *supra* note 84, at 19.

122. 18 U.S.C. § 3005 (1976).

123. *United States v. Watson,* 496 F.2d 1125, 1129 (4th Cir. 1973).

"the statute would be eviscerated by application of the harmless error doctrine," it "perceive[d] no alternative but to enforce" the statute, even though the evidence was "substantial, if not overwhelming" and on the whole the accused was "fairly tried." [124] I believe a similar outcome is even more strongly indicated where the right to two counsel derives from the Constitution rather than just a statute.

A refusal to demand precise quantification of prejudice in these limited circumstances is further necessitated by the character of the interests shielded by the constitutional protection denied in this case. Lest we forget, the right to counsel of choice is one that safeguards the dignity of the accused and of the court. The right to choose to defend oneself *pro se,* the Supreme Court has recently proclaimed, is also such a right,[125] and we have recognized that the interest in preserving that dignity demands that a refusal of the right not be deemed harmless.[126] By the same token, one charged with crime must have a fair opportunity to retain counsel of his choice even if the court's choice of counsel would make for a better defense.[127] It is our heritage that

"each person is ultimately responsible for choosing his own fate, including his position before the law," [128] and I share the Ninth Circuit's view that reversal of an erroneous denial of the right to pick one's own retained counsel may be necessary even absent an obvious example of prejudicial impact.[129]

Indeed, this court adopted that very proposition many years ago. In *Smith v. United States,*[130] we examined a situation in which counsel was appointed to represent Smith after his retained counsel failed to appear for trial because he was kept in another court longer than he had anticipated.[131] Assuming that error had occurred,[132] we held that reversal would be warranted not only if the accused had been "actually prejudiced" but also if "the attorney assigned to represent the defendant was unsatisfactory to him . . . ." [133] In that case the accused had made no objections to the appointment; in this case appellant did protest his dissatisfaction, and *Smith* thus directs us to reverse.

If I believed it possible on careful scrutiny to determine the presence or absence of

**124.** *Id.* at 1129–1130. But *cf. Smith v. United States,* 122 U.S.App.D.C. 300, 307–308, 353 F.2d 838, 845–846 (1965), *cert. denied,* 384 U.S. 974, 86 S.Ct. 1867, 16 L.Ed.2d 684 (1966) (prejudice presumed where accused was not informed of right to two counsel, although he never requested two; presumption overcome by overwhelming evidence and superior performance of single counsel).

**125.** See *Faretta v. California, supra* note 35, 422 U.S. at 834, 95 S.Ct. at 2540–2541, 45 L.Ed.2d at 581.

**126.** *United States v. Dougherty, supra* note 27, 154 U.S.App.D.C. at 90–91, 473 F.2d at 1127–1128 (right to appear *pro se* is not "result-oriented"); *Chapman v. United States, supra* note 27, 553 F.2d at 891–892 (wholly irrelevant whether result would be the same; in fact, the defense the accused wished to assert *pro se* was frivolous). In *Faretta v. California, supra* note 35, the Supreme Court reversed without mention of prejudice a denial of the right to proceed *pro se* after noting that "in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." 422 U.S. at 834, 95 S.Ct. at 2540, 45 L.Ed.2d at 581.

**127.** But *cf.* note 34 *supra.*

**128.** *Chapman v. United States, supra* note 27, 553 F.2d at 891.

**129.** *Releford v. United States, supra* note 27, 288 F.2d at 301–302; accord, *United States v. Johnston, supra* note 31, 318 F.2d at 289, 291; *Davis v. State,* 292 Ala. 210, 291 So.2d 346, 350 (1974). But see *Good v. United States,* 378 F.2d 934, 936 (9th Cir. 1967) (no reversible abuse of discretion in denial of continuance to enable dismissal of retained counsel on day before trial since counsel performed adequately).

**130.** *Supra* note 28.

**131.** 53 App.D.C. at 54–55, 288 F. at 260.

**132.** We found that no error had occurred in that case because neither the accused nor either of his lawyers had requested a continuance. *Id.* at 55–56, 288 F. at 261.

**133.** *Id.*

prejudice as a demonstrable fact, I would support a remand to the District Court for a hearing. But such an investigation would be both futile and dangerous: futile because outcroppings of prejudice—instances in which Mr. Hutter performed adequately but another counsel might have done better—would be next to impossible to discern; dangerous because in the absence of affirmative proof of prejudice one might tend to think that no harm had occurred. Even if it could be shown conclusively that appellant suffered no prejudice, I would have grave reservations about a ruling that the wrong done appellant is legally inconsequential. The right to counsel of choice seeks not only to assure an accurate assessment of guilt or innocence but also to protect the accused's dignity. If only violations of the former interests were remediable, breaches of the latter would have no effective protection. Courts will not allow constitutional rights so easily to come to naught.[134]

### V. CONCLUSION

The scope of trial-court discretion with respect to motions for continuance does not extend to the point of denying an accused a fully effective opportunity to retain a team of defense attorneys of his choice. That, however, has happened in this case, and I think the ensuing error was harmful. I must, then, respectfully dissent.

---

134. *Cf. Sanders v. Craven,* 488 F.2d 478, 480 (9th Cir. 1973) ("[t]he district judge may not circumvent the challenge of denial of effective [assistance of] counsel by, in effect, holding that any error would be harmless").