DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment by the Toledo Municipal Court finding appellant Richard Van Landingham guilty of a single count of resisting arrest. Because we find that the trial court erred in refusing appellant's request for continuance and in ordering him to go to trial on the morning of September 3, 2003, we reverse appellant's conviction and remand the matter to the Toledo Municipal Court for further proceedings consistent with this decision.
 {¶ 2} Trial in this matter was scheduled for the morning of September 3, 2003. On September 2, 2003, defendant's trial counsel, Robert Scott, filed a motion for continuance and waiver of time, a request for a continuance of a preliminary hearing, and a jury demand.
 {¶ 3} That same day, appellant filed a motion for continuance to obtain new counsel. In his motion, appellant alleged that Scott failed to return any of appellant's phone calls of the previous week, and that, on the eve of trial, when appellant finally did reach Scott, Scott informed appellant that he had only just filed a jury demand and that he was "not at all ready to proceed" the following day.
 {¶ 4} In a brief hearing before the trial began, Scott: (1) indicated that he was unaware of the request for a preliminary hearing that he had filed; (2) acknowledged that a jury demand cannot be filed one day before trial; and (3) stated that he had been fired on the evening of September 2, after the motion and jury demand were filed. Appellant disputed the last claim, stating in court that he did not fire his attorney, but rather his attorney had quit the previous night.
 {¶ 5} The court denied the request for a continuance and told the defendant that the case was going to trial that morning. The court offered the defendant the choice of representing himself or being represented by counsel. Faced with this Hobson's choice, appellant opted to keep Scott and, shortly thereafter, the case proceeded to a bench trial.
 {¶ 6} The evidence adduced at trial revealed the following. On May 10, 2003, police responded to a call of a burglary in progress on Paxton Street. When the police arrived, appellant was on the ground, semi-conscious, outside the home of his exgirlfriend, Yvette Camerlin. According to testimony by Camerlin, her ex-husband had just punched appellant in the face.
 {¶ 7} Appellant was transported to St. Vincent's Hospital for evaluation and treatment. He was examined for head injuries and received stitches for a laceration on his cheek.
 {¶ 8} Later that day, police arrived at the hospital emergency room with an arrest warrant for appellant. Eyewitness testimony revealed that while officers tried to arrest appellant he struggled and cursed, yelling that he was not going to jail and that he was "the victim."
 {¶ 9} At the close of the case, after both parties had rested, the trial judge observed that the testimony of emergency room nurse and eyewitness Shannon Chevalier "back[ed] one hundred percent, the testimony of the Toledo police officers." On that basis of that observation, the trial court found that it had "no choice but to find the defendant guilty."
 {¶ 10} Appellant raises the following assignments of error:
 {¶ 11} "Assignment of Error No. 1: Defendant's rights were violated when the trial court refused the request for continuance and ordered him to go to trial on the morning of September 3, 2003 either pro se or with counsel who had quit or been fired or both quit and been fired.
 {¶ 12} "Assignment of Error No. 2: Counsel's representation was so deficient as to deny defendant his right to effective assistance as guaranteed by the constitutions of the united states and of the state of ohio."
 {¶ 13} Whether to grant or deny a continuance is a matter left to the broad, sound discretion of the trial judge. Ungar v. Sarafite (1964),376 U.S. 575, 589; State v. Bayless (1976), 48 Ohio St.2d 73, 101. Absent an abuse of discretion, an appellate court must not reverse the denial of a continuance. Id
 {¶ 14} In reviewing the trial court's exercise of discretion, we must apply a balancing test which takes into account all the competing considerations. State v. Ungar (1981), 67 Ohio St.2d 65, 67. For example, any issue of potential prejudice to a defendant must be weighed against such other concerns as a court's right to control its own docket and the public's interest in the prompt and efficient dispensation of justice. Id. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id.
 {¶ 15} Among the considerations that should be evaluated are: the length of the delay requested; whether other continuances have been requested and granted; any inconvenience to the litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived; and whether the defendant contributed to the circumstances which gives rise to the request for a continuance. Id., citing United States v. Burton
(C.A.D.C. 1978), 584 F.2d 485, certiorari denied 439 U.S. 1069; Giacalonev. Lucas (C.A. 6, 1971), 445 F.2d 1238, certiorari denied 405 U.S. 922.
 {¶ 16} In the instant case, the trial court apparently based its denial of the last-minute requests for continuance on the grounds that there had been prior continuances and, most particularly, because the requests were made late.
 {¶ 17} Examination of the earlier continuances reveals that they were requested and granted for legitimate reasons. As indicated above, the charge in this case arose from events on May 10, 2003. Appellant was granted continuances on May 12 and May 14 to obtain counsel. A third continuance was granted on May 16 for pretrial. A final continuance for pretrial on July 21, 2003 was granted on June 4, 2003. Attorney Scott failed to appear at the July 21 pretrial, and the case was set for trial on September 3. Prior to September 3, 2003, no request for continuance of the trial date had ever been requested.
 {¶ 18} That attorney Scott's request for continuation of the trial date was made so late in the proceedings is both explained by and illustrative of the fact that he was unprepared to go to trial on the scheduled trial date. Similarly, appellant's eleventh-hour request for continuance came when it did because, according to allegations by appellant, it was not until the eve of trial that it became clear to him that Scott was totally unprepared to go forward.
 {¶ 19} The city of Toledo points out in support of the court's determination to deny the continuance that it was ready to proceed on the scheduled trial date with four witnesses, and that to have delayed the case further would have caused inconvenience for both the city and its witnesses. The city also points out that appellant and his counsel did not appear to be unprepared for trial, since they had six witnesses of their own (including appellant) who were present in court that day and ready to testify at trial.[1]
 {¶ 20} While the foregoing are certainly proper considerations, there is nothing in the record to suggest that the court gave any thought to counsel's admitted unpreparedness for trial or to the clear and uncontroverted breakdown that had occurred in the attorney-client relationship between counsel and appellant, regardless of whether Scott quit or was fired. In the opinion of this court, such failure to consider all of the relevant factors amounts to an abuse of discretion on the part of the trial court in refusing to grant the requests for continuance.
 {¶ 21} Accordingly, appellant's first assignment of error is well taken.
 {¶ 22} Next, we will review appellant's claim that his counsel's representation was so deficient as to have denied him his right to effective assistance.
 {¶ 23} A defendant's right to effective assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. The standard is basically the same under bothStrickland and Bradley. A defendant's right to effective assistance at trial is violated: (1) when counsel's performance is objectively deficient; and (2) when there is a reasonable probability that the deficiency was prejudicial. See, also, Williams v. Taylor (2000),529 U.S. 362. In making a determination as to ineffectiveness, a court "must consider the totality of the evidence before the judge or jury." Bradley, supra, at 142, quoting Strickland, supra, 466 U.S. at 695-696. A reviewing court's scrutiny of trial counsel's performance must be highly deferential, with a strong presumption that such conduct falls within the wide range of reasonable professional assistance.
 {¶ 24} First we will examine whether attorney Scott's performance was objectively deficient. As indicated above, attorney Scott filed a demand for jury out of rule and sought a necessary continuance only the day before trial.
 {¶ 25} He made no opening statement, which, in this case, might have provided an explanation and justification for evidence that the court ultimately prevented him from pursuing at trial.
 {¶ 26} At the close of the city's case in chief, attorney Scott moved to dismiss the charges on the grounds that the offense was alleged in the "paperwork" (by which he presumably meant the complaint) to have occurred on May 11, but all the witnesses testified about events they said occurred on May 10. The motion was denied, the trial court observing that the complaint said "on or about." In fact, the complaint alleges that the offense occurred on or about May 10; so attorney Scott was simply mistaken; more likely, he'd never read the affidavit.
 {¶ 27} Finally, attorney Scott made a closing "argument" of less than one page, which repeats the inaccuracy of his motion for acquittal and apologizes to the court for his lack of preparation and competence. The closing argument, in its totality, reads as follows:
 {¶ 28} "Sure, Your Honor, I'd like to make a closing. First off, I'll I'd like to thank this Court for it's [sic] indulgence in my performance this morning. And to point out that what we've got here is a case of several witnesses saying — saying things all a little bit differently but with a common thread, simply that Mr. Vanlandingham [sic] was injured, dazed, and you know, the question of whether or not during those 10 or 15 seconds he resisted.
 {¶ 29} "We don't deny that he cursed, that he was in pain and yelled about it then threatened to file charges against the officers. I do find it very telling however that all of the prosecution's witnesses got the date wrong and got it the same. We didn't have that much time to — well we didn't take that much time on the defense side to work on the testimony and I suppose it showed in the presentation. I hope this Court will be able to see past that to the root of the matter and find my defendant — find my client not guilty."
 {¶ 30} When attorney Scott told the judge at the outset that he was "not at all ready to proceed," he displayed a considerable gift for understatement. There is no evidence that he did any kind of investigation, or even interviewed a potential witness prior to the morning of September 3. He was oblivious to the court rule regarding the filing of a jury demand; he did not remember moving for a preliminary hearing (though, in fact, the burglary charge which formed the basis of the warrant on May 10, 2003 — a felony — had been abandoned). He failed to show up at the prosecutor's pretrial conference in July. His entire closing argument consisted of an awkward apology to the court, and a grotesque mistake as to the date of the offense, suggestive of the fact that he had not even read the underlying affidavit. He was sorely unprepared to try appellant's case, and his representation on September 3 was objectively deficient, thereby satisfying the first prong of the test for ineffective assistance.
 {¶ 31} Next, we turn our attention to the question of whether there is a reasonable probability that the deficiencies in Scott's representation were prejudicial to appellant. To demonstrate prejudice, a defendant must prove that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Bradley,
supra, paragraph three of the syllabus.
 {¶ 32} The elements of the charge of resisting arrest as defined in the Toledo Municipal Code are as follows:
 {¶ 33} "525.09 Resisting arrest.
 {¶ 34} "(a) No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another.
 {¶ 35} "(b) Whoever violates this section is guilty of resisting arrest, a misdemeanor of the second degree."
 {¶ 36} Thus, the necessary showing to establish resisting arrest is not especially burdensome. And, here, there was testimony that the appellant attempted to wrest his arms from the officers, and that he was cursing at Officer Lewandowski as he was being led from the treatment room. Thus, it is likely that even a competent defense would not have made much difference. Considering the totality of the evidence, then, we find that the deficiencies in Scott's representation, although manifold and egregious, were not reasonably likely to have affected the outcome of the trial. Accordingly, the second prong of the test for ineffective assistance is not met in this case. Appellant's second assignment of error is not well taken. But, for the reasons previously stated, the continuance should have been granted, and thus, we reverse and remand this matter to the Toledo Municipal Court for further proceedings consistent with this decision and journal entry. Pursuant to App.R. 24, court costs are assessed to appellee.
Judgment reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Glasser, J., concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] It appears from the record that none of the defense witnesses was subpoenaed. Each was there voluntarily, presumably at the behest of the defendant.